Sam S. Shaulson (SS-0460)
Thomas A. Linthorst (TL-3345)
tlinthorst@morganlewis.com
Law Offices
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York 10178
 (212) 309-6718 (Telephone)
 (212) 309-6001 (Fax)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| TIFFANY RYAN, individually and on behalf of all other similarly situated,<br><br>     Plaintiff,<br><br>    v.<br><br>JPMORGAN CHASE & CO., and JPMORGAN CHASE BANK, N.A.,<br><br>     Defendants. | Docket No.:  12-cv-4844-VLB |

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY ACTION, AND TO COMPEL ARBITRATION</u>

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL BACKGROUND .............................................................. 3

III.  STANDARD OF REVIEW .................................................................. 4

IV.   ARGUMENT ....................................................................................... 4

    A.    The Parties Clearly Agreed to Arbitrate ................................... 5

    B.    The Scope of the Agreement Encompasses Ryan's Lone Claim ................. 5

    C.    Congress Did Not Intend FLSA Claims To Be Nonarbitrable ..................... 6

    D.    None Of The Plaintiff's Anticipated Arguments Has Merit .......................... 9

        1.    Plaintiff's Anticipated Reliance on *Raniere* Is Misplaced ................ 9

            a.    Contrary to *Raniere* -- There Is No Record Of Any Congressional Intent To Preclude Parties To An Arbitration Agreement From Agreeing To Forego Collective Action Procedures ................................ 10

            b.    The Right To Pursue FLSA Claims In A Collective Action Is Procedural, Not Substantive ................................ 14

        2.    Plaintiff's Anticipated Reliance On *Amex* Is Misplaced ................ 15

        3.    Plaintiff's Anticipated Reliance On *D.R. Horton* Is Misplaced ....................................................................... 19

            a.    Procedural defects render *D.R. Horton* invalid ................... 21

            b.    *D.R. Horton* has no application to this case ........................ 22

            c.    *D.R. Horton* was wrongly decided ....................................... 23

            d.    *D.R. Horton* is not entitled to deference ............................. 25

V.    CONCLUSION .................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps;">CASES</span>

*14 Penn Plaza LLC v. Pyett*,
  556 U.S. 247 (2009)..................................................................................24

*Adkins v. Labor Ready, Inc.*,
  303 F.3d 496 (4th Cir. 2002) .....................................................................7

*Alford v. Martin & Gass, Inc.*,
  No. 1:08CV595, 2009 WL 2447936 (E.D. Va. Aug. 3, 2009) ................17

*Aneja v. Triborough Bridge & Tunnel Auth.*,
  35 F. App'x 19 (2d Cir. 2002) ...................................................................18

*Aracri v. Dillard's, Inc.*,
  No. 1:10cv253, 2011 WL 1388613 (S.D. Ohio Mar. 29, 2011) ...............8

*Arrigo v. Blue Fish Commodities, Inc.*,
  704 F. Supp. 2d 299 (S.D.N.Y. 2010), *aff'd*, 408 F. App'x 480 (2d Cir. 2011)......................6

*Arrington v. NBC*,
  531 F. Supp. 498 (D.D.C. 1982) ...............................................................11

*AT&T Mobility LLC v. Concepcion*,
  131 S. Ct. 1740 (2011).................................................................. passim

*Bilyou v. Dutchess Beer Distrib., Inc.*,
  300 F.3d 217 (2d Cir. 2002)......................................................................18

*Brown v. Luxottica Retail N. Am. Inc.*,
  No. 09C7816, 2010 WL 3893820 (N.D. Ill. Sept. 29, 2010).....................9

*Brown v. TrueBlue, Inc.*,
  No. 1:10-cv-0514, 2011 WL 5869773 (M.D. Pa. Nov. 22, 2011)...........8

*Caley v. Gulfstream Aerospace Corp.*,
  428 F.3d 1359 (11th Cir. 2005) .................................................................8

*Carter v. Countrywide Credit Indus. Inc.*,
  362 F.3d 294 (5th Cir. 2004) ...............................................................6, 7

*Chamber of Commerce of the United States of America, et al., v. NLRB*,
  No. Civ. 11-2262 (JEB), -- F.Supp.2d -- , 2012 WL 1664028 (D.D.C. May 14,
  2012), *appeal filed* (Aug. 7, 2012)..........................................................21

*Chrysler Corp. v. Brown*,
    441 U.S. 281 (1979)........................................................................................13

*Ciago v. Ameriquest Mortg. Co.*,
    295 F. Supp. 2d 324 (S.D.N.Y. 2003)..................................................................5

*City of Milwaukee v. Illinois & Michigan*,
    451 U.S. 304 (1981)........................................................................................16

*Coleman v. Jenny Craig, Inc.*,
    No. 3:11–cv–1301–MMA–DHB, 2012 WL 3140299 (S.D. Cal. May 15, 2012) .................20

*CompuCredit Corp. v. Greenwood*,
    132 S. Ct. 665 (2012)........................................................................13, 16, 20, 24

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*,
    447 U.S. 102 (1980)........................................................................................13

*D'Antuono v. Serv. Road Corp.*,
    789 F. Supp. 2d 308 (D. Conn. 2011)..........................................................8, 14, 16

*Damassia v. Duane Reade, Inc.*,
    250 F.R.D. 152 (S.D.N.Y. 2008) ........................................................................14

*De Oliveira v. Citicorp N.A., Inc.*,
    No. 8:12-cv-251-T-26TGW, 2012 WL 1831230 (M.D. Fla. May 18, 2012) ........................20

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)..........................................................................................2

*Delock v. Securitas Security Servs, USA, Inc,*,
    No. 11-cv-520-PM, slip op. (E.D. Ark. Aug. 1, 2012) ..........................................19

*Deposit Guarantee National Bank v. Roper*,
    445 U.S. 326 (1980)........................................................................................24

*Douglas v. D.B. Virginia, LLC*,
    No. 4:10CV80, 2010 WL 5572830 (E.D.Va. Dec. 13, 2010)..................................18

*F.C.C. v. NextWave Personal Commc'ns Inc.*,
    537 U.S. 293 (2003)........................................................................................13

*Faye v. High's of Balt.*,
    541 F. Supp. 2d 752 (D. Md. 2008) ..................................................................18

*Gibbons v. Equitable Life Ins. Soc'y*,
    173 F.2d 337 (2d Cir. 1949)..............................................................................12

*Gilmer v. Interstate/Johnson Lane Corp.*,
 500 U.S. 20 (1991) ................................................................................................ passim

*Green Tree Fin. Corp.-Ala. v. Randolph*,
 531 U.S. 79 (2000) .................................................................................................4

*Guida v. Home Sav. of Am., Inc.*,
 793 F. Supp. 2d 611 (E.D.N.Y. 2011) ..................................................................14

*Havey v. Homebound Mortg., Inc.*,
 547 F.3d 158 (2d Cir. 2008) ..................................................................................18

*Hoffman Plastic Compounds, Inc. v. NLRB*,
 535 U.S. 137 (2002) ...............................................................................................25

*Hoffmann-LaRoche, Inc. v. Sperling*,
 493 U.S. 165 (1989) ........................................................................................ 6-7, 12

*Horenstein v. Mortg. Mkt., Inc.*,
 9 F. App'x 618 (9th Cir. 2001) ...............................................................................8

*In re American Express Merchs. Litig.*,
 667 F.3d 204 (2d Cir. 2012) ("*Amex III*") ....................................................15, 16

*In re American Express Merchs. Litig.*,
 634 F.3d 187 (2d Cir. 2011) ("*Amex II*") .......................................................... passim

*In re American Express Merchs. Litig.*,
 554 F.3d 300 (2d Cir. 2009) ("*Amex I*") ...........................................15,16, 17, 23

*In re Arbitration Between Ball & SFX Broad., Inc.*,
 665 N.Y.S.2d 444 (N.Y. Sup. Ct. App. Div. 1997) ................................................5

*In re D.R. Horton, Inc.*,
 357 NLRB No. 184, 2012 WL 36274 (Jan. 3, 2012) ....................................... passim

*Int'l Assoc. of Machinists and Aerospace Workers*,
 355 NLRB 1062 (Aug. 27, 2010) ..........................................................................23

*Jackson v. Jean Coutu Grp. (PJC) USA, Inc.*,
 Civil Action No. CV2006-194, 2007 WL 1850710 (S.D. Ga. June 26, 2007) ......18

*Jasso v. Money Mart Express, Inc.*,
 No. 11-cv-5500 YGR, 2012 WL 1309171 (N.D. Cal. April 13, 2012) ............16, 20

*Johnmohammadi v. Bloomingdales, Inc.*,
 No. 2:11-cv-06434-GW, 2012 WL 3144882 (C.D. Cal. Feb. 29, 2012) ..........20, 25

*Kaltwasser v. AT&T Mobility LLC*,
    812 F. Supp. 2d 1042 (N.D. Cal. 2011) ...............................................................16

*La Torre v. BFS Retail & Commercial Operations, LLC*,
    No. 08-22046-Civ., 2008 WL 5156301 (S.D. Fla. Dec. 8, 2008).............................9

*LaVoice v. UBS Fin. Servs., Inc.*,
    No. 11CV2308 (BSJ)(JLC), 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012)...................... passim

*Long John Silver's Rests., Inc. v. Cole*,
    514 F.3d 345 (4th Cir. 2008) ..................................................................................7

*Mansberger v. Ernst & Young LLP*,
    No. 652093/10, Mtn. Seq. No. 004 ,"Decision and Order" (Sup. Ct. N.Y. Cnty.,
    July 7, 2011)...........................................................................................................18

*McCluskey v. J.P. McHale Pest Mgmt., Inc.*,
    147 F. App'x 203 (2d Cir. 2005) ...........................................................................18

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)............................................................................................4, 5

*Morvant v. P.F. Chang's China Bistro, Inc.*,
    No. 11-CV-05405 YGR, 2012 WL 1604851 (N.D. Cal. May 7, 2012) .................................20

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)........................................................................................4, 13, 14

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010), *cert. denied*, 132 S. Ct. 368 (2011) ...........................15

*Nelsen v. Legacy Partners Residential, Inc.*,
    144 Cal. Rptr. 3d 198 (Cal. Ct. App. 2012) ..........................................................19

*New Process Steel, L.P. v. NLRB*,
    130 S. Ct. 2635 (2010)..........................................................................................21

*Newhall v. Chase Home Fin. LLC*,
    No. 8:10-cv-2624-T-26EAJ, 2010 WL 8759340 (M.D. Fla. Dec. 22, 2010) ...........................2

*NLRB v. Food Store Emps. Union, Local 347*,
    417 U.S. 1 (1974)..................................................................................................22

*NLRB v. P*I*E Nationwide, Inc.*,
    894 F.2d 887 (7th Cir. 1990) ................................................................................22

*Noland v. Enterprise Holdings, Inc.*,
    No. 10–2140–JWL, 2010 WL 2555122 (D. Kan. June 22, 2010) ...........................18

*Oldroyd v. Elmira Sav. Bank, FSB*,
    134 F.3d 72 (2d Cir. 1998)................................................................5, 6

*Palmer v. Convergys Corp.*,
    No. 10-cv-145 (HL), 2012 WL 425256 (M.D. Ga. Feb. 9, 2012) ...........................20

*Pomposi v. GameStop, Inc.*,
    No. 3:09-cv-340 (VLB), 2010 WL 147196 (D. Conn. Jan. 11, 2010)................8, 14

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*,
    991 F.2d 42 (2d Cir. 1993)................................................................4

*Ramsey v. Ryan Beck & Co.*,
    No. 07-635, 2007 WL 2234567 (E.D. Pa. Aug. 1, 2007) .....................................11

*Raniere v. Citigroup, Inc.*,
    827 F. Supp. 2d 294 (S.D.N.Y. 2011)........................................... passim

*Reid v. Supershuttle Int'l, Inc.*,
    No. 08-CV-4854 (JG)(VVP), 2010 WL 1049613 (E.D.N.Y. Mar. 22, 2010) ...................8, 14

*Reyes v. Texas Ezpawn, L.P.*,
    Civil Action No. V-03-128, 2007 WL 3143315 (S.D. Tex Oct. 24, 2007) ...........................18

*Reynolds v. de Silva*,
    No. 09 Civ 9218 (CM), 2010 WL 743510 (S.D.N.Y. Feb. 24, 2010) ................4, 6

*Rompalli v. Portnova*,
    No. 09 civ. 3083 (RMB)(FM), 2010 WL 2034396 (S.D.N.Y. May 5, 2010).....................5, 6

*Sanders v. Swift Transp. Co. of Arizona, LLC*,
    843 F. Supp. 2d 1033 (N.D. Cal. 2012) ................................................20

*Shahriar v. Smith & Wollensky Rest. Group, Inc.*,
    659 F.3d 234 (2d Cir. 2011)................................................................15

*Slawienski v. Nephron Pharm. Corp.*,
    No. 1:10-cv-0460-JEC, 2010 WL 5186622 (N.D. Ga. Dec. 9, 2010) .......................9

*Spears v. Mid-America Waffles, Inc.*,
    No. 11-2273-CM, 2012 WL 2568157 (D. Kan. July 2, 2012)...........................8, 19

*Valle v. Lowe's HIW, Inc.*,
    No. 11-1489 SC, 2011 WL 3667441 (N.D. Cal. Aug. 22, 2011) ........................8-9

*Vilches v. Travelers Cos.*,
    413 F. App'x 487 (3d Cir. 2011) ......................................................7

*Westerfield v. Wash. Mut. Bank*,
    No. 06-2817, 2007 WL 2162989 (E.D.N.Y. July 26, 2007)....................................14

*Wilbur v. Silgan Containers Corp.*,
    No. 2:06-cv-02181-MCE-EFB, 2008 WL 3863700 (E.D.Cal. Aug. 19, 2008).....................18

*Winn v. v. Tenet Healthcare Corp.*,
    No. 2:10-cv-02140-JPM-CGC, 2011 WL 294407 (W.D. Tenn. Jan. 27, 2011).......................8

## STATUTES

9 U.S.C. § 1 *et seq.*..............................................................................................................1

9 U.S.C. § 4 .......................................................................................................................2

29 U.S.C. § 153(b) ..........................................................................................................21

29 U.S.C. § 216(b) ....................................................................................................... passim

Pub. L. 49, Ch. 52 § 61 Stat. 84 (1947) ........................................................................12

## OTHER AUTHORITIES

83 Cong. Rec. 9264 (June 14, 1938).......................................................................11, 13

Federal Rule of Civil Procedure 20 ...............................................................................12

Federal Rule of Civil Procedure 23 ...............................................................................15

House Rep. No. 71, Feb. 25, 1947 .................................................................................11

Memorandum GC 10-06 (Jun. 16, 2010), available at
    https://www.nlrb.gov/publications/.............................................................................23

Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A., pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, hereby move this Court to dismiss this action, or in the alternative stay this action in its entirety, and order the parties to arbitration in accordance with the agreement requiring Plaintiff Tiffany Ryan to submit her claims against Defendants to arbitration.

## I.   **INTRODUCTION**

Plaintiff Tiffany Ryan was employed by JPMorgan Chase Bank, N.A. ("Chase") as an Assistant Branch Manager at several branches in New York between March 2010 and February 2012.  On June 20, 2012, Ryan filed this lawsuit seeking overtime under the Fair Labor Standards Act ("FLSA"), which she seeks to maintain as a collective action under 29 U.S.C. § 216(b).

On March 11, 2010, Ryan executed an offer letter accepting employment with Chase, which contained a Binding Arbitration Affirmation.  (*See* Declaration of Thomas Linthorst ("Linthorst Decl.') ¶ 2, Ex. 1, attaching Declaration of Karen Hart ¶ 3 ("Hart Decl.") and Ex. A).  Ryan's signed affirmation stated that she had read and understood the "Binding Arbitration Agreement" and agreed that her employment was subject to that agreement.  *Id.*  The Binding Arbitration Agreement ("BAA") requires that Ryan submit "all employment-related claims . . . that I have or in the future may have against JPMorgan Chase," including claims under the "Fair Labor Standards Act of 1938," to "final and binding arbitration in accordance with this Agreement."  (BAA ¶¶ 1, 2, attached as Ex. B to Hart Decl.).

Accordingly, this Court should dismiss this action and compel arbitration pursuant to section 4 of the FAA, which provides, in pertinent part, that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . . [U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court **shall** make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4 (emphasis added).

As the U.S. Supreme Court has repeatedly explained, the FAA reflects "a liberal federal policy favoring arbitration" and requires courts to enforce arbitration agreements according to their terms. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749 (2011) (internal citations omitted). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

This Court has recently recognized the primacy of the FAA when granting defendants' Motion to Compel Arbitration in an FLSA case brought as a putative collective action in *LaVoice v. UBS Fin. Servs., Inc.*, No. 11CV2308 (BSJ)(JLC), 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012). Moreover, another federal court has compelled arbitration of an FLSA putative collective action based on the same Binding Arbitration Agreement at issue here. *See Newhall v. Chase Home Fin. LLC*, No. 8:10-cv-2624-T-26EAJ, 2010 WL 8759340 (M.D. Fla. Dec. 22, 2010).

Despite the fact that the Binding Arbitration Agreement plainly requires that Ryan's overtime claim be submitted to arbitration, she has filed this litigation rather than arbitrate her claim. For these reasons, as discussed more fully below, Defendants respectfully move this Court for an order dismissing this action, or in the alternative staying the action in its entirety, and compelling arbitration of Ryan's claim for overtime under the FLSA.

## II.     FACTUAL BACKGROUND

On March 11, 2010, in connection with being hired by Chase, Ryan agreed to the

Binding Arbitration Agreement.  (Hart Decl.¶ 3, Ex. A).  Specifically, Ryan signed a

Binding Arbitration Affirmation, which provided as follows:

> I understand my employment is subject to my and JPMorgan Chase's
> agreement to submit employment-related disputes that cannot be resolved
> internally to binding arbitration, as set forth in the Binding Arbitration
> Agreement http://www.jpmorganchase.com/pdfdoc/JPMCArbAgreement.
> By signing below, I acknowledge and agree that I have read and understand
> the Binding Arbitration Agreement, have accepted its terms and understand
> that it is a condition of my employment with JPMorgan Chase.

(Hart Decl. ¶ 3, Ex. A).

The Binding Arbitration Agreement provides as follows:

> As a condition of and in consideration of my employment with JPMorgan
> Chase & Co. or any of its direct or indirect subsidiaries, I agree with
> JPMorgan Chase as follows:
>
> **1.      Scope:**  Any and all "Covered Claims" (as defined below) between
> me and JPMorgan Chase . . . shall be submitted to and resolved by final and
> binding arbitration in accordance with this Agreement.
>
> **2.      Covered Claims:**  "Covered Claims" include all legally protected
> employment-related claims, . . . that I have or in the future may have against
> JPMorgan Chase . . . which arise out of or relate to my employment or
> separation from employment with JPMorgan Chase . . . including, but not
> limited to, . . . [violations of] the Fair Labor Standards Act of 1938 . . . .

(Hart Decl. ¶ 4, Ex. B ¶¶ 1-2) (emphasis added).  "JPMorgan Chase" is defined to

include "JPMorgan Chase & Co. and all of its direct and indirect subsidiaries,"

which includes JPMorgan Chase Bank, N.A.  (Hart. Decl. Ex. B, p. 1).

Furthermore, Plaintiff agreed to arbitrate any such claims on an individual basis.

(Hart Decl. Ex. B ¶ 4).  The arbitrator is expressly granted authority to "grant any

remedy or relief that would have been available to the parties had the matter been

heard in court," including "attorneys' fees as provided or limited by applicable law." (Hart. Decl. Ex. B, p. 4).

III.   **STANDARD OF REVIEW**

The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (internal citations omitted). "Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *LaVoice*, 2012 WL 124590, at *2 (internal citations omitted); *see also Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 45 (2d Cir. 1993). Where, as here, all of the claims in the action are subject to arbitration, the Court should dismiss rather than stay the case. For example, in *Reynolds v. de Silva*, No. 09 Civ. 9218 (CM), 2010 WL 743510, at *8-9 (S.D.N.Y. Feb. 24, 2010) the court dismissed the action, noting that "[a]ll courts of which we are aware have followed the rule that, [w]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings." (internal quotations and citations omitted).

IV.   **ARGUMENT**

The FAA embodies the "liberal federal policy favoring arbitration agreements" and "establishes that, **as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.**" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (emphasis added); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (the FAA, and the strong federal policy favoring arbitration that it embodies, requires courts to "rigorously enforce agreements to arbitrate"). Therefore, when a party bound by an

4

arbitration agreement raises a claim founded on statutory rights, a district court must

determine:  (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; and

(3) if federal statutory claims are asserted, whether Congress intended those claims to be

nonarbitrable.  *Mitsubishi Motors Corp.*, 473 U.S. at 626-28; *Oldroyd v. Elmira Sav. Bank,*

*FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998); *LaVoice*, 2012 WL 124590, at *2.  Here, all three

prongs indicate that arbitration of Ryan's claim must be compelled.

### A.    The Parties Clearly Agreed to Arbitrate.

Ryan signed an acknowledgement that she would be bound by the Binding

Arbitration Agreement as part of her acceptance of the offer of employment.  (Hart Decl. ¶

3 and Ex. A).  Under New York law, this formed a valid agreement to arbitrate.  *See, e.g.,*

*Rompalli v. Portnova*, No. 09 civ. 3083 (RMB)(FM), 2010 WL 2034396, at *4-5 (S.D.N.Y.

May 5, 2010) (applying New York law to conclude there was no fraudulent inducement of

arbitration agreement contained in employment contract where agreement clearly provided

for binding arbitration of employment disputes); *Ciago v. Ameriquest Mortg. Co.*, 295 F.

Supp. 2d 324, 327-29 (S.D.N.Y. 2003) (compelling arbitration under New York law where

plaintiff signed a statement on employment application indicating she understood future

employment would be conditioned upon her assent to an arbitration agreement); *In re*

*Arbitration Between Ball & SFX Broad., Inc.*, 665 N.Y.S.2d 444, 446 (N.Y. Sup. Ct. App.

Div. 1997) (holding arbitration agreement in contract of employment was valid under New

York law).

### B.    The Scope of the Agreement Encompasses Ryan's Lone Claim.

The Binding Arbitration Agreement states that it covers all claims that "arise out of

or relate to employment" with "JPMorgan Chase & Co. or any of its direct or indirect

subsidiaries" including claims under the "Fair Labor Standards Act of 1938."  (Hart Decl.

¶ 4, Ex. B ¶ 2).  The arbitration agreement clearly encompasses the only claim asserted in

this litigation – a claim for overtime under the FLSA.  *See* Complaint at ¶¶ 57-71.

### C.      Congress Did Not Intend FLSA Claims To Be Nonarbitrable.

"It is well settled that federal statutory claims can be the subject of arbitration,

absent a contrary Congressional intent . . . The burden of showing such legislative intent

lies with the party opposing arbitration."  *Oldroyd*, 134 F.3d at 77-78 (citations omitted).

"Perhaps indicative of the difficulty of making such a showing, the Supreme Court has

seldom found congressional intent to preclude the arbitration of any particular statutory

claim."  *Carter v. Countrywide Credit Indus. Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

Here, nothing in the FLSA indicates Congress intended to preclude compulsory

arbitration of FLSA claims, and courts in this Circuit (and elsewhere) have repeatedly held

that FLSA claims are arbitrable.  *See, e.g.*, *Arrigo v. Blue Fish Commodities, Inc.*, 704 F.

Supp. 2d 299, 304 (S.D.N.Y. 2010) (dismissing action and compelling arbitration because

"Congress did not intend FLSA claims to be non-arbitrable"), *aff'd*, 408 F. App'x 480 (2d

Cir. 2011); *Rompalli*, 2010 WL 2034396, at *6 (holding that FLSA claims are arbitrable);

*Reynolds*, 2010 WL 743510, at *5, *8-9 (dismissing action and compelling arbitration of

FLSA claims because "Plaintiff does not point to anything in the text of the FLSA that

suggests Congress intended to preclude arbitration of FLSA claims").

The fact that Ryan has pled her claim as a putative collective action despite her

agreement to arbitrate her claims individually does not change the result.  The Supreme

Court recognized this fact in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26-29

(1991), when it compelled to arbitration a statutory claim for age discrimination under the

federal Age Discrimination in Employment Act (ADEA).  The ADEA incorporates the

FLSA's collective action procedure under 29 U.S.C. § 216(b).  *Hoffmann-LaRoche, Inc. v.*

*Sperling*, 493 U.S. 165, 167-68 (1989).  Responding to the argument that arbitration procedures could not adequately further the ADEA's purposes because they do not provide for class actions, the Supreme Court stated that the arbitral rules as issue in that case provided for collective proceedings, but ruled further that "even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator, **the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred.**"  *Gilmer*, 500 U.S. at 32 (internal citation omitted).

The five Circuit Courts of Appeals, and just about every other federal court, to consider the issue have concluded that the right to proceed collectively is a procedural right that parties to an arbitration agreement may agree to forego.  *See, e.g., Vilches v. Travelers Cos.*, 413 F. App'x 487, 494 n.4 (3d Cir. 2011) ("[T]here is no 'suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action under that statute'") (internal citation omitted); *Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 351 (4th Cir. 2008) (finding no evidence of congressional intent that the collective action procedures of § 216(b) were substantive rights that could not be waived); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002) (affirming an order to compel plaintiff's FLSA claim to arbitration on an individual basis, finding "no suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action under that statute" and plaintiff's "inability to bring a class action, therefore, cannot by itself suffice to defeat the strong congressional preference for an arbitral forum"); *Carter*, 362 F.3d at 298 (affirming an order to compel plaintiffs' FLSA claims to arbitration on an individual basis, and rejecting claim that

"inability to proceed collectively deprives [employees] of substantive rights under the FLSA"); *Horenstein v. Mortg. Mkt., Inc.*, 9 F. App'x 618, 619 (9th Cir. 2001) (rejecting plaintiffs' contention that their arbitration agreement was unenforceable "because it eliminates their statutory right to a collective action" because "there is nothing in the text [or] the legislative history [of the FLSA] indicating that Congress intended to preclude arbitration of FLSA claims[, and a]lthough plaintiffs who sign arbitration agreements lack the procedural right to proceed as a class [under the FLSA], they nonetheless retain all substantive rights under the statute") (internal citations omitted); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1366, 1378-79 (11th Cir. 2005) (enforcing agreement to arbitrate FLSA and ADEA claims even though agreement precluded class and collective action claims); *LaVoice*, 2012 WL 124590 , at *3 (compelling individual arbitration of putative FLSA collective action); *D'Antuono v. Serv. Road Corp.*, 789 F. Supp. 2d 308, 341 (D. Conn. 2011) (concluding that the parties' "collective and class action waiver provision" is "valid and enforceable" and compelling FLSA claims to arbitration on an individual basis); *Pomposi v. GameStop, Inc.*, No. 3:09-cv-340 (VLB), 2010 WL 147196, at *11 (D. Conn. Jan. 11, 2010) (explaining that the right to bring a collective action under the FLSA can be waived, and compelling arbitration); *Reid v. Supershuttle Int'l, Inc.*, No. 08-CV-4854 (JG)(VVP), 2010 WL 1049613, at *4 (E.D.N.Y. Mar. 22, 2010) (same).[1]

---

[1]     *See also Spears v. Mid-America Waffles, Inc.*, No. 11-2273-CM, 2012 WL 2568157 (D. Kan. July 2, 2012) (compelling arbitration and following *LaVoice*); *Winn v. v. Tenet Healthcare Corp.*, No. 2:10-cv-02140-JPM-CGC, 2011 WL 294407, at *10 (W.D. Tenn. Jan. 27, 2011) (granting defendant's motion to compel arbitration and upholding collective action waiver because "[r]equiring Plaintiff to arbitrate her claim individually does not diminish either the remedial or protective functions of the FLSA.") (internal citation omitted); *Aracri v. Dillard's, Inc.*, No. 1:10cv253, 2011 WL 1388613, at *4-5 (S.D. Ohio Mar. 29, 2011) (granting defendant's motion to compel arbitration and rejecting plaintiffs' contention that "the only practical way the FLSA can be enforced is to proceed collectively because individual claims tend to involve small monetary remedies"); *Brown v. TrueBlue, Inc.*, No. 1:10-cv-0514, 2011 WL 5869773, at *2, *4 (M.D. Pa. Nov. 22, 2011) (granting defendant's motion to compel arbitration and holding that in light of Concepcion the class/collective action waiver was enforceable); *Valle v. Lowe's HIW, Inc.*, No. 11-1489 SC, 2011 WL

Because the parties clearly agreed to arbitrate, the BAA encompasses Plaintiff's FLSA claim, and Congress did not intend to make FLSA claims non-arbitrable, Plaintiff will be unable to meet her burden of demonstrating that her claim should not be compelled to arbitration.  For these reasons, the FAA requires the Court to enforce the arbitration agreement in accordance with its terms.  *Concepcion*, 131 S. Ct. at 1748-49 (FAA required the enforcement of an arbitration agreement with a class action waiver because a "principal purpose" of the FAA is enforcement of arbitration agreements "according to their terms") (internal citation omitted).

### D.   None Of The Plaintiff's Anticipated Arguments Has Merit.

#### 1.   Plaintiff's Anticipated Reliance on *Raniere* Is Misplaced.

Defendants anticipate that Plaintiff will rely on *Raniere v. Citigroup, Inc.*, 827 F. Supp. 2d 294 (S.D.N.Y. 2011), *appeal filed* Dec. 13, 2011, for the argument that the BAA cannot be enforced because it contains a collective action waiver and Congress did not intend to permit an employee to waive his or her ability to bring FLSA claims as a *collective action*.  Respectfully, *Raniere's* novel holding – that "the right to proceed collectively under the FLSA cannot be waived," and is "unenforceable as a matter of law," *id.* at 310, 314 – is clearly incorrect because it conflicts with the Supreme Court's ruling in *Gilmer*, is unsupported by the FLSA's legislative history, and is based on the erroneous assumption that proceeding by collective action is a substantive, rather than procedural,

---

3667441, at *6 (N.D. Cal. Aug. 22, 2011) (granting defendant's motion to compel arbitration of FLSA and other claims and holding that class/collective action waiver was enforceable due to Concepcion); *Brown v. Luxottica Retail N. Am. Inc.*, No. 09C7816, 2010 WL 3893820, at *6 (N.D. Ill. Sept. 29, 2010) (granting defendants' motion to compel named plaintiff to individual arbitration of FLSA claim despite collective action waiver); *Slawienski v. Nephron Pharm. Corp.*, No. 1:10-cv-0460-JEC, 2010 WL 5186622, at *2 (N.D. Ga. Dec. 9, 2010) (granting defendant's motion to compel arbitration of FLSA claim in accordance with plaintiffs' arbitration agreements despite class/collective action waiver); *La Torre v. BFS Retail & Commercial Operations, LLC*, No. 08-22046-Civ., 2008 WL 5156301, at *5 (S.D. Fla. Dec. 8, 2008) (compelling arbitration of FLSA claims and enforcing collective action waiver).

right.  This is why the other courts addressing the issue have held that parties to an

arbitration agreement may agree to forego the collective action procedures, as they did here.

> ### a.   Contrary to *Raniere* -- There Is No Record Of Any Congressional Intent To Preclude Parties To An Arbitration Agreement From Agreeing To Forego Collective Action Procedures.

Neither the text nor the legislative history of the collective action provisions of 29

U.S.C. § 216(b) suggests—let alone establishes—that Congress intended that right to be

unwaivable.  As the Supreme Court itself noted with respect to Section 216(b) in *Gilmer*,

"the fact that the [ADEA] provides for the possibility of bringing a collective action does

not mean that individual attempts at conciliation were intended to be barred."  *Gilmer*, 500

U.S. at 32 (internal citation omitted); *see also In re Am. Express Merchs.*, 634 F.3d 187,

196 (2d Cir. 2011) ("*Amex II*") (observing that, in *Gilmer*, the Supreme Court rejected the

argument that a collective action waiver "is unenforceable merely because the relevant

statute allows [collective] actions").

Moreover, the snippet of legislative history erroneously relied upon in *Raniere* fails

to support the decision for at least three independent reasons.  First, the legislative history

quoted in *Raniere* says nothing at all about whether parties to an arbitration agreement may

agree to forego the collective action procedures under the FLSA.  Indeed, the entire thrust

of Representative Keller's remarks was that the draft bill would allow an employee to bring

his or her own action to recover wages *rather than having to rely solely on the government

for enforcement*:

> the provision which I have mentioned puts directly into the hands of employees who are affected by violation the means and ability to assert and enforce their own rights, thus avoiding the assumption by the Government of the sole responsibility to enforce the act.

*Raniere*, 827 F. Supp. 2d at 312-13 (quoting H. Rep. No. 2738, 75th Cong. 3d Sess., at 33 and 83 Cong. Rec. 9264).

Second, and more critically, the comment by Representative Keller relied upon in *Raniere*, which the court said demonstrated that the "FLSA collective action mechanism was . . . a Congressional determination regarding the allocation of enforcement costs, as the ability of employees to bring actions collectively reduces the burden borne by the public fisc," 827 F. Supp. 2d at 314, was made when the FLSA was originally enacted in 1938, at which time the law did ***not*** include a right to pursue claims in a collective action. This right was added for the first time nine years later in the 1947 Portal-to-Portal Act, which amended the FLSA to eliminate representative actions in favor of opt-in collective actions. *See, e.g., Arrington v. NBC*, 531 F. Supp. 498, 500-02 (D.D.C. 1982) (analyzing legislative history of the 1947 amendments to Section 216(b) of the FLSA).

In addition, the legislative history of the 1947 amendments to Section 216(b) makes clear that the opt-in mechanism was, in fact, designed to protect *employers* and to *limit* the jurisdiction of federal courts. Congress referred to the onslaught of FLSA mass claims as a "serious threat to industrial relations" that could "bankrupt many employers and seriously retard the activities of many others," and expressed concern that these mass actions had "clogged the courts with new and expensive litigation" House Rep. No. 71, Feb. 25, 1947, pp. 1032-34; *see also Ramsey v. Ryan Beck & Co.*, No. 07-635, 2007 WL 2234567, at *2 (E.D. Pa. Aug. 1, 2007) ("Congress adopted the opt-in procedure for FLSA collective actions in order to limit the number of plaintiffs in such actions *to those who asserted claim in their own right* and *to free employers from the burden of representative actions*.") (internal quotations and citations omitted; emphasis added).

11

As Judge Augustus Hand explained in an opinion just two years after Section 216(b) was amended:  "The terms of the Portal-to-Portal Act indicate that *one of its aims was to prevent the assertion of surprise claims by unnamed employees* at a time when the statute of limitations would otherwise have run."  *Gibbons v. Equitable Life Ins. Soc'y*, 173 F.2d 337, 339 (2d Cir. 1949) (emphasis added).  In fact, Congress went so far as to title the relevant statutory provision:  "Representative Actions Banned," Pub. L. 49, Ch. 52 § 61 Stat. 84, 87 (1947).  Thus, far from evincing an intention to create an unwaivable right, Congress instead evinced a clear intent to *limit* claims for overtime by requiring plaintiffs asserting such claims to affirmatively "opt-in" to such lawsuits as a party plaintiff by filing a written consent, a new voluntary joinder procedure like Federal Rule of Civil Procedure 20.  As the Supreme Court has explained:  "The relevant amendment was for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and *freeing employers of the burden of representative actions*."  *Hoffman-LaRoche Inc.*, 493 U.S. at 173 (emphasis added).  Thus, since the 1947 amendments to the FLSA eliminated representative actions in favor of individually-asserted claims, any reliance by *Raniere* on a supposed statement by Representative Keller nine years earlier in 1938 in favor of such actions provides no basis to conclude Congress had a clear intent to bar agreements to arbitrate on an individual basis.

Third, even if the snippet relied upon by the *Raniere* court had evidenced an intent by Representative Keller that the right to pursue FLSA claims in a collective action could not be waived in an arbitration agreement – which it plainly did not since the right did not yet exist – the Supreme Court has been critical of attempts to divine the intent of Congress from snippets of legislative history, such as the portion of a statement by a single

Representative (Keller).  *See, e.g., F.C.C. v. NextWave Personal Commc'ns Inc.*, 537 U.S.

293, 305 (2003) (dismissing dissent's reliance on "the ever-available snippets of legislative

history" to ascertain the "purpose" a statutory provision); *Consumer Prod. Safety Comm'n*

*v. GTE Sylvania, Inc.*, 447 U.S. 102, 118 (1980) ("[O]rdinarily even the contemporaneous

remarks of a single legislator who sponsors a bill are not controlling in analyzing legislative

history."); *Chrysler Corp. v. Brown*, 441 U.S. 281, 311 (1979) ("The remarks of a single

legislator, even the sponsor, are not controlling in analyzing legislative history.").  *Cf.* 83

Cong. Rec. 9264 (June 14, 1938) (demonstrating nearly one dozen speakers provided

commentary on the 1938 enactment of the FLSA).

     *Raniere's* reliance on this isolated statement is especially erroneous given that the

Supreme Court has stated that in examining congressional intent to "preclude a waiver," "it

should be kept in mind that 'questions of arbitrability must be addressed with a healthy

regard for the policy favoring arbitration.'"  *Gilmer*, 500 U.S. at 26 (quoting *Moses H. Cone*

*Mem'l Hosp.*, 460 U.S. at 24); *see also CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665,

669 (2012).  The Second Circuit has likewise explained that "each case which presents a

question of enforceability of a class action waiver in an arbitration agreement" must be

analyzed "with a healthy regard for the fact that the FAA is a congressional declaration of a

liberal policy favoring arbitration agreements."  *Amex II*, 634 F.3d at 199 (internal

quotations and citation omitted).  Absent evidence of intent, the mere fact that the statute

"provides for the possibility of bringing a collective action" does not mean that the ability

to resolve claims individually has been precluded.  *Gilmer*, 500 U.S. at 32 (internal citation

omitted); *see also Amex II*, 634 F.3d at 196.  And, of course, "any doubts concerning the

scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at

hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

### b. The Right To Pursue FLSA Claims In A Collective Action Is Procedural, Not Substantive.

In finding collective action waivers *per se* unenforceable in an arbitration agreement, *Raniere* concluded that this procedural joinder mechanism creates a substantive, not procedural, right.  827 F. Supp. 2d at 310-14.  However, the right to bring a collective action plainly is procedural, not substantive.

District court decisions within the Second Circuit (other than *Raniere*) have **uniformly** held that the right to bring a collective action under the FLSA can be waived, because such a right is procedural, not substantive.  *See LaVoice*, 2012 WL 124590, at *6 (declining to follow *Raniere*, holding right to bring FLSA claim as collective action could be waived and compelling arbitration); *D'Antuono*, 789 F. Supp. 2d at 341 (concluding that the parties' "collective and class waiver provision" is "valid and enforceable" and compelling FLSA claims to arbitration on an individual basis); *Pomposi*, 2010 WL 147196, at *11 (explaining that the right to bring a collective action under the FLSA can be waived, and compelling arbitration); *Reid*, 2010 WL 1049613, at *4 (same); *see also Guida v. Home Sav. of Am., Inc.*, 793 F. Supp. 2d 611, 615 (E.D.N.Y. 2011) (stating that the issue of whether plaintiffs could proceed as a collective action is procedural); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 164 (S.D.N.Y. 2008) ("It is far more natural to see the opt-in provision of the FLSA, like the class action rules they resemble, simply as procedural mechanisms for vindication of the substantive rights provided by the FLSA"); *Westerfield v. Wash. Mut. Bank*, No. 06-2817, 2007 WL 2162989, at *1 (E.D.N.Y. July 26, 2007)

14

("Section 216(b) by its terms governs procedural rights.  It establishes the procedure to be followed to establish party plaintiff status in an FLSA action.").

Even the Second Circuit has recognized that the right to proceed collectively under Section 216(b) is a "procedural mechanism," undermining any argument that it is a substantive, unwaivable right.  *Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 244, 247 (2d Cir. 2011) (explaining that "plaintiffs frequently bring [FLSA and NYLL] claims together in a single action using the *procedural mechanisms available under 29 U.S.C. §216(b) to pursue the FLSA claims as a collective action* and under Rule 23 to pursue the NYLL claims as a class action") (emphasis added); *Myers v. Hertz Corp.*, 624 F.3d 537, 542 (2d Cir. 2010), *cert. denied*, 132 S. Ct. 368 (2011) (drawing a distinction between §216(b)'s collective-action provisions and the "FLSA's substantive provisions"); *accord, In re Am. Express Merchs. Litig.*, 554 F.3d 300, 312 (2d Cir. 2009) ("*Amex I*") ("insofar as a plaintiff may be said to possess a 'right' to litigate an action in federal court as a class action under Rule 23 … , *the right 'is a procedural right only, ancillary to the litigation of substantive claims*.'") (citation omitted, emphasis added).

Accordingly, the *Raniere* court erred in concluding that the FLSA right to proceed collectively was a substantive right that could never be waived.

## 2.     Plaintiff's Anticipated Reliance On *Amex* Is Misplaced.

Defendants also anticipate that Plaintiff will seek to avoid her obligation to arbitrate by arguing under *Amex I*, 554 F.3d 300 (2d Cir. 2009), *aff'd*, 634 F.3d 187 (2d Cir. 2011) ("*Amex II*"), *aff'd*, 667 F.3d 204 (2d Cir. 2012) ("*Amex III*") (referred to collectively as "*Amex*"), that her agreement to arbitrate her FLSA claim on an individual basis is unenforceable because she will not be able to vindicate her statutory rights in individual arbitration.  As an initial matter, the vindication-of-rights rule upon which *Amex* is based

was abrogated by *Concepcion*, and the Second Circuit in *Amex III* failed to consider the well-established rule that when a federal statute, such as the FAA, preempts a state law rule (such as the *Discover Bank* rule), it necessarily supplants all federal common-law versions of that rule.  *See City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 316 (1981).[2]  But regardless, even assuming that *Amex* still was good law, the arbitration agreement here does not prevent Ryan from vindicating her statutory rights because, just as in *LaVoice*, the facts and circumstances in this case "differ drastically" from the facts and circumstances at issue in *Amex*.  *LaVoice*, 2012 WL 124590, at *7-9.

*Amex* is an antitrust case by credit card merchants where the plaintiff provided a detailed and undisputed affidavit from an expert economist establishing that (1) the median damages would be $1,751 ($5,252 with treble damages) and (2) "[d]ue to the complexity and analytical intensity of an antitrust study . . . the cost of expert assistance in individual plaintiff antitrust cases has ranged from about $300 thousand to more than $2 million," and that the case likely would fall in the middle of that range, over $1 million.  *Amex I*, 554 F.3d at 305, 316-17.  Moreover, the anticipated expert fees of over $1 million were not

---

[2]        Indeed, the standard for supplanting federal common law is easier to satisfy than the standard for preempting state law.  *See id.* (explaining that preemption implicates federalism concerns (i.e., there is a "presumption against preemption of state law") while supplanting federal common law does not (i.e., federal common law gives way to federal statutes such as the FAA)).  The California *Discover Bank* rule found pre-empted in *Concepcion* has "the same purpose and effect" as the *Amex* federal common law vindication-of-rights rule.  *D'Antuono*, 789 F. Supp. 2d at 339.  Both nullify class or collective action waivers in arbitration agreements.  *See Amex III*, 667 F. 3d at 212.  And both rest on the same rationale—that "class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system."  *Compare Concepcion*, 131 S. Ct. at 1753 *with Amex II*, 634 F.3d at 199; *see also Kaltwasser v. AT&T Mobility LLC*, 812 F. Supp. 2d 1042, 1048-49 (N.D. Cal. 2011) (explaining that *Amex II's* vindication-of-rights rule essentially applies the "underlying rationale" of the pre-empted California law *Discover Bank* rule).  Thus, *Concepcion's* holding that the FAA preempts California's *Discover Bank* rule necessarily means that the FAA supplants *Amex's* federal common-law vindication-of-rights rule.  *See D'Antuono*, 789 F. Supp. 2d at 339 (explaining that it know of  "no principled reason why federal law rules that have essentially the same purpose and effect as the *Discover Bank* rule would continue to be permissible after [*Concepcion*]."); *Jasso v. Money Mart Express, Inc.*, No. 11-cv-5500 YGR, 2012 WL 1309171, at *6 (N.D. Cal. April 13, 2012) (holding that, "in *CompuCredit*, the Supreme Court clarified that any distinction from *Concepcion* based upon state law versus federal 'substantive law of arbitrability' (*Amex II*, 667 F.3d at 212) was not viable").

recoverable either under the Clayton Act or the parties' arbitration agreement.  *Id.*  Based on these facts, which differ drastically from the facts in this case, the Second Circuit concluded that a potential recovery of $5,252 (with treble damages), when compared to $1 million in unrecoverable expert fees, would preclude individual actions.  *Amex I*, 554 F.3d at 317-19.

Where "a party seeks to invalidate an arbitration agreement [under *Amex*] on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."  *Amex I*, 554 F.3d at 315 (internal citations omitted).  Here, Plaintiff will not be able to meet her burden of showing the likelihood of incurring such "prohibitively expensive" costs such that the practical effect of enforcement of the arbitration agreement would preclude her from vindicating her statutory rights. Unlike the antitrust claims in *Amex*, expert testimony is not necessary to adjudicate Plaintiff's overtime claims.  No expert is required, or even would be qualified, to determine what Plaintiff's actual daily job duties or hours were, and no expert is required to multiply the number of hours worked over 40, if any, by Plaintiff's overtime rate to arrive at her claimed damages.  For example, in *Alford v. Martin & Gass, Inc.*, No. 1:08CV595 (LMB/TRJ), 2009 WL 2447936, *2, *5 & n.5 (E.D. Va. Aug. 3, 2009) the court excluded plaintiff's expert in single plaintiff FLSA misclassification case from testifying at trial "because his testimony concerning the FLSA claims was unnecessary" and struck the attorneys' fees and costs relating to expert as "wholly unnecessary" because the expert's "only work on the FLSA claims was a calculation of the value of [plaintiff's'] lost overtime pay . . . .  This simple mathematical calculation did not require an expert."  And even if

Plaintiff were to argue the need for expert testimony here, there is no way that the expert testimony would even approach $1 million dollars at issue in *Amex*.

Nor should the attorney's fees and other costs be so high in a single plaintiff misclassification case as to prevent an attorney from taking the case, or the plaintiff from being able to vindicate his or her rights.  Plaintiffs' counsel routinely represent single plaintiffs in individual FLSA overtime actions, including specifically in overtime misclassification actions brought by managers and assistant managers.[3]  And unlike in *Amex* where plaintiff could not recover expert fees, fees and costs would be recoverable in arbitration here.  *See* 29 U.S.C. § 216(b) ("The court in such action shall . . . allow a reasonable attorney's fee to be paid by the defendant");  Hart Decl. ¶ 4, Ex. B. at ¶ 7(h) (arbitrator is empowered to grant any remedy or relief that would be available had the matter been heard in court, including attorneys' fees); *Mansberger v. Ernst & Young LLP*, No. 652093/10, Mtn. Seq. No. 004, "Decision and Order" (Sup. Ct. N.Y. Cnty., July 7, 2011) (enforcing arbitration agreement with class action waiver, regardless of amount of potential recovery, where defendant agreed to pay arbitration fees and that the plaintiff

---

[3]     For example, here are just a tiny fraction of single plaintiff FLSA overtime cases that can be found with a simple Westlaw search:  *Douglas v. D.B. Virginia, LLC*, No. 4:10CV80, 2010 WL 5572830 (E.D.Va. Dec. 13, 2010) (single plaintiff FLSA OT misclassification case involving sales associate/assistant manager); *Noland v. Enterprise Holdings, Inc.*, No. 10–2140–JWL, 2010 WL 2555122 (D. Kan. June 22, 2010) (single plaintiff FLSA OT misclassification case involving assistant branch manager); *Wilbur v. Silgan Containers Corp.*, No. 2:06-cv-02181-MCE-EFB, 2008 WL 3863700 (E.D.Cal. Aug. 19, 2008) (single Plaintiff FLSA OT misclassification case involving production supervisor); *Faye v. High's of Balt.*, 541 F. Supp. 2d 752 (D. Md. 2008) (single plaintiff convenience store manager FLSA OT case); *Reyes v. Texas Ezpawn, L.P.*, Civil Action No. V-03-128, 2007 WL 3143315 (S.D. Tex Oct. 24, 2007) (single plaintiff assistant store manager FLSA OT case); *Jackson v. Jean Coutu Grp. (PJC) USA, Inc.*, Civil Action No. CV2006-194, 2007 WL 1850710 (S.D. Ga. June 26, 2007) (single plaintiff drug store manager FLSA OT case); *Havey v. Homebound Mortg., Inc.*, 547 F.3d 158 (2d Cir. 2008) (single plaintiff FLSA OT case by mortgage underwriter); *McCluskey v. J.P. McHale Pest Mgmt., Inc.*, 147 F. App'x 203 (2d Cir. 2005) (single plaintiff FLSA OT case by outside salesperson); *Bilyou v. Dutchess Beer Distrib., Inc.*, 300 F.3d 217 (2d Cir. 2002) (single plaintiff FLSA and state law OT case by delivery route driver); *Aneja v. Triborough Bridge & Tunnel Auth.*, 35 F. App'x 19 (2d Cir. 2002) (single plaintiff FLSA OT case by engineer).

could recover fees and costs to the extent they would be recoverable in court)  (attached to the Linthorst Decl. ¶ 3, Ex. 2).

> ### 3.     Plaintiff's Anticipated Reliance On *D.R. Horton* Is Misplaced.

Defendants also anticipate that Plaintiff will seek to avoid her arbitration obligation by attempting to rely on the decision by *two* of the *five*-member NLRB in *In re D.R. Horton, Inc.*, 357 NLRB No. 184, 2012 WL 36274 (Jan. 3, 2012), that "an employer violates Section 8(a)(1) of the National Labor Relations Act ("NLRA") when it requires employees …, as a condition of their employment, to sign an agreement that precludes them from filing … class, or collective claims … ."  Plaintiffs' anticipated reliance on *D.R. Horton* is misplaced because the decision:  (1) has numerous procedural defects that render it invalid; (2) has no application to this case; (3) is wrongly decided; and (4) is not entitled to deference.  Numerous courts have rejected arguments that *D.R. Horton* bars enforcement of class and collective action waivers.  *See, e.g.*, *LaVoice*, 2012 WL 124590, at *6 (declining to follow *D.R. Horton* and rejecting the argument that the right to a collective action cannot be waived in an arbitration agreement as "conflicting" with *Concepcion* because *Concepcion* "stand[s] against any argument that an absolute right to collective action is consistent with the FAA's 'overarching purpose' of 'ensur[ing] the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings'") (internal citation omitted); *Spears*, 2012 WL 2568157, at *2 (same); *Delock v. Securitas Security Servs, USA, Inc,*, No. 11-cv-520-PM, slip op. at 11-16 (E.D. Ark. Aug. 1, 2012) (rejecting *D.R. Horton* interpretation of the FAA as contrary to Supreme Court precedent, and explaining that there is also no evidence of intent in the NLRA to preclude the FAA's requirement that arbitration agreements be enforced according to their terms); *Nelsen v. Legacy Partners Residential, Inc.*, 144 Cal. Rptr. 3d 198, 213 (Cal. Ct. App. 2012)

(affirming order compelling individual arbitration and holding that *D.R. Horton* was not

persuasive because, *inter alia*, its subject matter "falls well outside the board's core

expertise."); *Coleman v. Jenny Craig, Inc.*, No. 3:11–cv–1301–MMA–DHB, 2012 WL

3140299 (S.D. Cal. May 15, 2012) (holding that a class action waiver in plaintiffs'

arbitration agreement did not violate the NLRA); *Morvant v. P.F. Chang's China Bistro,*

*Inc.*, No. 11-CV-05405 YGR, 2012 WL 1604851, *8-12 & n.5 (N.D. Cal. May 7, 2012)

(holding that the "NLRB's decision is not binding upon this Court" and concluding that

*D.R. Horton* and the NLRA did not bar enforcement of arbitration agreements containing

class action waivers); *De Oliveira v. Citicorp N.A., Inc.*, No. 8:12-cv-251-T-26TGW, 2012

WL 1831230, at *2 (M.D. Fla. May 18, 2012) (enforcing class/collective action waiver and

declining to follow *D.R. Horton*); *Jasso*, 2012 WL 1309171, at *8-10 (enforcing class

action waiver under *Concepcion* and *CompuCredit* and declining to follow *D.R. Horton*

because "there is no language in the NLRA (or in the related Norris-LaGuardia Act)

demonstrating that Congress intended the employee concerted action rights therein to

override the mandate of the FAA"); *Johnmohammadi v. Bloomingdales, Inc.*, No. 2:11-cv-

06434-GW (AJWx), 2012 WL 3144882 (C.D. Cal. Feb. 29, 2012) (granting motion to

compel individual arbitration and, in declining to follow *D.R. Horton*, holding that the FAA

invests courts and not the NLRB with the authority to interpret the FAA); *Sanders v. Swift*

*Transp. Co. of Arizona, LLC*, 843 F. Supp. 2d 1033, 1036 n.1 (N.D. Cal. 2012) (granting

motion to compel arbitration and finding that "*Horton* is inapposite and therefore the Court

will not consider it in determining the motion"); *Palmer v. Convergys Corp.*, No. 10-cv-145

(HL), 2012 WL 425256, at *3 n.2 (M.D. Ga. Feb. 9, 2012) (stating that *D.R. Horton* "does

not meaningfully apply to the facts of the present case" and striking class action allegations based on plaintiffs' class action waivers).

a.        **Procedural defects render *D.R. Horton* invalid.**

The *D.R. Horton* decision is procedurally invalid because the NLRB lacked a sufficient quorum to issue the decision.  With only two members participating (instead of the required quorum of three), the NLRB lacked legal authority to render a decision at all, and thus *D.R. Horton* is void.  *See* 29 U.S.C. § 153(b) ("[T]hree members of the Board shall, at all times, constitute a quorum of the Board."); *New Process Steel, L.P. v. NLRB*, 130 S. Ct. 2635, 2644-46 (2010).  In *Chamber of Commerce of the United States of America, et al., v. NLRB*,  No. Civ. 11-2262 (JEB), -- F.Supp.2d -- , 2012 WL 1664028, at *1 (D.D.C. May 14, 2012), *appeal filed* (Aug. 7, 2012), the district court held that the NLRB did not hold a proper quorum when only two of three Board members voted on amendments to NLRB rules governing disputes about union representation.  The district court invalidated the amended rule, holding, "because no quorum ever existed for the pivotal vote in question, the Court must hold that the challenged rule is invalid."  *Id*. Distinguishing between "participating" in the vote and "mere presence" on the Board, the court held that Board Member Hayes, who did not vote on the amended rules, could not be counted as part of a quorum "merely because he was a member of the Board at the time the rule was adopted."  *Id*. at *5.  Just like the amended rules at issue in *Chamber of Commerce*, Board Member Hayes also did not participate in the *D.R. Horton* decision. *D.R. Horton*, 357 NLRB No. 184 at 1 fn.1 ("Member Hayes is recused and **did not participate** in deciding the merits of the case.") (emphasis added).  Since only two Board Members participated in the *D.R. Horton* decision, the Board did not have a quorum and the *D.R. Horton* decision is invalid.

21

*D.R. Horton* also is not applicable to this case because NLRB decisions are not self-enforcing – the NLRB must petition a court of appeal to enforce its decision. *NLRB v. P\*I\*E Nationwide, Inc.*, 894 F.2d 887, 893 (7th Cir. 1990) ("The Board . . . still must go to a court of appeals and ask that court to issue an order enforcing the Board's order."). In *D.R. Horton*, the NLRB has not obtained an Order enforcing its decision, and therefore it is not binding even upon the parties in *D.R. Horton*, let alone on this Court. *Id*. In fact, *D.R. Horton* is currently on appeal to the Fifth Circuit. *D.R. Horton v. NLRB,* 5th Cir. Case No. 12-60031 (filed Jan. 13, 2012).

Finally, *D.R. Horton* is invalid because it is inconsistent with the position of both litigants in that case that the NLRA permits class and collective action waivers. Therefore, there was no justiciable controversy on this point and the decision was an improper advisory opinion.

### b.   *D.R. Horton* has no application to this case.

The *D.R. Horton* decision has no application to this case because it cannot be given retroactive effect. Decisions of the NLRB have no retroactive effect unless the NLRB meets its own stringent standards by stating in its decision the basis for retroactive effect, and absent such basis, federal courts may not give NLRB decisions retroactive effect. *See NLRB v. Food Store Emps. Union, Local 347*, 417 U.S. 1, 10 (1974) (reversing D.C. Circuit's retroactive application of new NLRB decision "because the Board should be given the first opportunity to determine whether the new policy should be applied retroactively"). Here, the NLRB did not indicate that *D.R. Horton* should apply retroactively, and this Court therefore cannot give retroactive effect to that decision by applying it to the Plaintiff's BAA which was entered into in 2010.

Furthermore, at the time Plaintiff executed her BAA, existing law as reflected in a Guideline Memorandum authored and published by the NLRB's then-General Counsel, Ronald Meisburg, was that "an employer's conditioning employment on an employee's agreeing that the employee's individual non-NLRA statutory employment claims will be resolved in an arbitral forum is permissible under the Supreme Court's holding in *Gilmer*." Memorandum GC 10-06 (Jun. 16, 2010), available at https://www.nlrb.gov/publications/general-counsel-memos.  Applying *D.R. Horton* retroactively would upset the settled law at the time that Chase and Plaintiff entered into the BAA.  Under the NLRB's own standard for determining retroactive effect, *D.R. Horton* would work a manifest injustice if applied retroactively, and therefore cannot be so applied.  *See Int'l Assoc. of Machinists and Aerospace Workers*, 355 NLRB 1062, 1069 (Aug. 27, 2010) (holding that a ruling would not be applied retroactively where "consistent court approval," "the lack of any contrary indication by the Board, and the General Counsel's previous advice" could have led a party to reasonably believe its actions were lawful).  For this reason, *D.R. Horton* cannot and should not be applied here.

### c.   *D.R. Horton* **was wrongly decided.**

In *D.R. Horton*, two NLRB members determined that an agreement to individually arbitrate non-NLRA claims constitutes an unfair labor practice under § 8(a)(1) of the NLRA because it deprives employees of their rights under Section 7 of the NLRA "to engage in … concerted activities for the purpose of collective bargaining or other mutual aid or protection[.]"  *D.R. Horton*, 357 NLRB No. 184, at *2.  That holding, however, rested on the erroneous premise that the option to file a class or collective action is a "core substantive right protected by the NLRA."  *Id.* at *5, 12.  In fact, the members clearly understood that the FAA would require enforcement of such waivers if the options to bring

23

class or collective actions were procedural rights, *id.* at *12.—which they are *as explained by the Second Circuit* and as discussed above. *Amex I*, 554 F.3d at 312 (explaining that bringing a class action is a "procedural right," quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 332 (1980)).

*D.R. Horton* also is wrong because it contradicts the Supreme Court's assertion that the FAA would still require enforcement of agreements to arbitrate employment claims "even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator." *Gilmer*, 500 U.S. at 32; *see also Concepcion*, 131 S. Ct. 1740, 1748-49 (a "principal purpose" of the FAA is enforcement of arbitration agreements "according to their terms"); *CompuCredit Corp.*, 132 S. Ct. at 669 (same).

The *D.R. Horton* decision expressly recognized that parties to an arbitration agreement can agree to forego class or collective action procedures with respect to non-NLRA claims, but exclusively reserved that right to unions, not individual non-union employees. *D.R. Horton*, 357 NLRB No. 184, at *13. This rank favoritism for employees who decide to be represented by a union over those who do not tramples on the NLRA's Section 7 rights of non-union employees to "refrain from" acting collectively, and is contrary to the Supreme Court's ruling that "[n]othing in the law suggests a distinction between the status of arbitration agreements signed by an individual employee and those agreed to by a union representative." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 257 (2009) (applying *Gilmer* to a union's agreement to arbitrate ADEA claims in part because "[j]udicial nullification of contractual concessions ... is contrary to what the Court has recognized as one of the fundamental policies of the National Labor Relations Act-freedom of contract.") (internal citation omitted).

####    d.    *D.R. Horton* **is not entitled to deference**

NLRB decisions are not entitled to deference where they interpret statutes other than the NLRA or attempt to reconcile the NLRA with other statutes.  *See, e.g., Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 143-44 (2002) (explaining that NLRB decisions interpreting statutes other than the NLRA are not entitled to deference).  Here, *D.R. Horton* should not be entitled to any deference because the NLRB reached its decision by interpreting the NLRA, the FAA, and the Norris-LaGuardia Act, purporting to resolve a conflict between those statutes.  357 NLRB No. 184, at *7-8, 10-16.  The NLRB is <u>not</u> charged with administering the FLSA, or the FAA or the Norris-LaGuardia Act, and its erroneous opinions about the FAA and the Norris-LaGuardia Act in *D.R. Horton* are not entitled to deference.  *See e.g.*, *Johnmohammadi*, 2012 WL 3144882 (holding that the FAA invests courts and not the NLRB with the authority to interpret the FAA),

**V.    CONCLUSION**

Because Ryan's FLSA claim is covered by a valid and binding arbitration agreement, Defendants respectfully request that this Court dismiss this action and compel arbitration.  In the alternative, Defendants request that this Court stay this action in its entirety, and compel Ryan to arbitrate her FLSA claim under the terms of the Binding Arbitration Agreement, pursuant to the FAA.

Dated:  August 21, 2012                          Respectfully submitted,

                                                 MORGAN, LEWIS & BOCKIUS LLP


                                                 s/Thomas A. Linthorst_____
                                                 Sam S. Shaulson (SS-0460)
                                                 Thomas A. Linthorst (TL-3345)

                                                 Attorneys for Defendants

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY ACTION, AND TO COMPEL ARBITRATION** was electronically filed with the Court and served via its ECF/CM system, on August 21, 2012, upon the following:

Donald L. Sapir, Esq.
Sapir & Frumkin LLP
399 Knollwood Road, Suite 310
White Plains, NY  10603
Tel:  914-328-0366; Fax:  914-682-9128

*Attorneys for Plaintiff*

I also certify that the foregoing document is being served on August 21, 2012 via U.S. Mail on the following:

Adam T. Klein, Esq.
Molly A. Brooks, Esq.
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, NY  10016
Tel:  212-245-1000

*Attorneys for Plaintiff*

s/ Thomas A. Linthorst
Thomas A. Linthorst

26