SAPIR & FRUMKIN LLP                       OUTTEN & GOLDEN LLP
Donald L. Sapir                           Adam T. Klein
Howard Schragin                           Molly A. Brooks
399 Knollwood Road, Suite 310             Michael J. Scimone
White Plains, New York 10603              3 Park Avenue, 29th Floor
Telephone:  (914) 328-0366                New York, New York 10016
                                          Telephone:  (212) 245-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIFFANY RYAN, individually and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br><br>        v.<br><br>JPMORGAN CHASE & CO. and JPMORGAN CHASE BANK, N.A.,<br>                Defendants. | No. 12 Civ. 4844 (VLB) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY ACTION AND COMPEL ARBITRATION

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND .................................................................................... 1

ARGUMENT ............................................................................................................ 3

I.    The BAA  is Unenforceable Because It Precludes Plaintiff from Vindicating Substantive FLSA Rights ................................................................................. 3

      A.    The Right to Proceed Collectively Under the FLSA Cannot Be Waived ......................................................................................... 5

      B.    *Raniere*'s Application of FLSA Legislative History is Sound .................. 8

      C.    The BAA's Severability Clause Requires that Ryan's Case Proceed in Court ........................................................................................ 9

II.    BAA Is Unenforceable Because It Is Contrary to Federal Policy. ........................ 9

      A.    The BAA Violates the National Labor Relations Act ............................ 10

      B.    The NLRB's Decision in *D.R. Horton* is Entitled to "the Greatest Deference." ................................................................................ 11

            1.    Courts Follow *D.R. Horton* ......................................................... 13

            2.    *D.R. Horton* Was Validly Decided ............................................... 13

            3.    Defendants' Other Complaints About *D.R. Horton* are Baseless ........................................................................... 14

            4.    The NLRB Will Rule on the BAA's Legality. ............................. 16

      C.    The BAA violates the Norris-LaGuardia Act ........................................ 16

      D.    The FAA Does Not Conflict with the NLRA or Norris-LaGuardia Act .............................................................................. 20

III.    The BAA is Unenforceable Because It Has the Effect of Immunizing Chase From FLSA Claims ........................................................................................ 23

CONCLUSION....................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re 127 Restaurant Corp.*,
    331 NLRB 269 (2000) ............................................................................................... 10

*14 Penn Plaza LLC v. Pyett*,
    556 U.S. 247 (2009) .................................................................................................. 15

*ABF Freight Sys., Inc. v. NLRB*,
    510 U.S. 317 (1994) .................................................................................................. 12

*In re Am. Express Merch. Litig.*,
    554 F.3d 300 (2d Cir. 2009) ("*Amex I*") ................................................... 4, 7, 23, 24

*In re Am. Express Merch. Litig.*,
    634 F.3d 187 (2d Cir. 2011) ("*Amex II*") ..................................................... 4, 7, 23

*In re Am. Express Merch. Litig.*,
    667 F.3d 204 (2d Cir. 2012) ("*Amex III*") ............................................... 4, 5, 23, 24

*In re Am. Express Merch. Litig.*,
    681 F.3d 139 (2d Cir. 2012) ("*Amex IV*") ............................................................ 4, 8

*AT&T Mobility LLC v. Concepcion*,
    131 S. Ct. 1740 (2011) ..................................................................... 1, 4, 20, 21

*Brady v. Nat'l Football League*,
    644 F.3d 661 (8th Cir. 2011) .................................................................................. 12

*Brooklyn Sav. Bank v. O'Neil*,
    324 U.S. 697 (1945) ............................................................................................. 3, 6

*Caley v. Gulfstream Aerospace Corp.*,
    428 F.3d 1359 (11th Cir. 2005) ................................................................................. 7

*Chen-Oster v. Goldman, Sachs & Co.*,
    785 F. Supp. 2d 394 (S.D.N.Y. 2011) ...................................................................... 5

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984) ................................................................................................ 11

*CompuCredit Corp. v. Greenwood*,
    132 S. Ct. 665 (2012) .............................................................................................. 22

*In re D. R. Horton, Inc.*,
    357 NLRB No. 184 (Jan. 3, 2012) ................................................................. passim

*D'Antuono v. Serv. Road Corp.*,
    789 F. Supp. 2d 308 (D. Conn. 2011) ...................................................................8

*DeGaetano v. Smith Barney, Inc.*,
    983 F. Supp. 459 (S.D.N.Y. 1997)........................................................................4

*Delock v. Securitas Security Services USA, Inc.*,
    No. 11 Civ. 520, 2012 WL 3150391 (E.D. Ark. Aug. 1, 2012).....................15, 18

*Doctor's Assoc., Inc. v. Casarotto*,
    517 U.S. 681 (1996)...............................................................................................9

*Eastex, Inc. v. N.L.R.B.*,
    437 U.S. 556 (1978).............................................................................................10

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)................................................................................................7

*Glaziers & Glassworkers Local Union No. 767 v. Custom Auto Glass Distributors*,
    689 F.2d 1339 (9th Cir. 1982) ............................................................................16

*Green Tree Fin. Corp. v. Randolph*,
    531 U.S. 79 (2000)................................................................................................3

*Hadnot v. Bay, Ltd.*,
    344 F.3d 474 (5th Cir. 2003) ................................................................................4

*Herrington v. Waterstone Mortgage Corp.*,
    No. 11 Civ. 779, 2012 WL 1242318 (W.D. Wis. Mar. 16, 2012) ...................13, 20

*In Re Int'l Ass'n of Machinists & Aerospace Workers*,
    355 NLRB No. 174 (Aug. 27, 2010) ...................................................................15

*Jasso v. Money Mart Express, Inc.*,
    No. 11 Civ. 5500, 2012 WL 1309171 (N.D. Cal. Apr. 13, 2012) .........................20

*Johnmohammadi v. Bloomingdale's, Inc.*,
    No. 11 Civ. 6434, 2012 WL 3144882 (C.D. Cal. Feb. 29, 2012).........................15

*Kaiser Steel Corp. v. Mullins*,
    455 U.S. 72 (1982)................................................................................................9

*Kristian v. Comcast Corp.*,
    446 F.3d 25 (1st Cir. 2006)...................................................................................4

*LaVoice v. UBS Financial Services., Inc.*,
    No. 11 Civ. 2308, 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012)............................8

*Leviton Mfg. Co., Inc. v. NLRB*,
   486 F.2d 686 (1st Cir. 1973) ................................................................. 12

*Long John Silver's Rest., Inc. v. Cole*,
   514 F.3d 345 (4th Cir. 2008) ................................................................... 7

*Mastro Plastics Corp. v. NLRB*,
   350 U.S. 270 (1956) ............................................................................... 15

*Meyers Indus.*,
   281 NLRB 882 (1986) ............................................................................ 10

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
   473 U.S. 614 (1985) ................................................................................. 3

*Morton v. Mancari*,
   417 U.S. 535 (1974) ............................................................................... 20

*Morvant v. P.F. Chang's China Bistro, Inc.*,
   No. 11 Civ. 5405, 2012 WL 1604851 (N.D. Cal. May 7, 2012) ........................ 18, 20

*Nat'l Woodwork Mfrs. Ass'n v. NLRB*,
   386 U.S. 612 (1967) ............................................................................... 13

*Nelsen v. Legacy Partners Residential, Inc.*,
   144 Cal. Rptr. 3d 198 (2012) ................................................................. 15

*New Process Steel, L.P. v. NLRB*,
   130 S. Ct. 2635 (2010) ........................................................................... 14

*NLRB v. United Food & Commercial Workers Union, Local 23, AFL-CIO*,
   484 U.S. 112 (1987) ............................................................................... 12

*Owen v. Bristol Care, Inc.*,
   No. 11 Civ. 4258, 2012 WL 1192005 (W.D. Mo. Feb. 28, 2012) .................... 13, 20

*Paladino v. Avnet Computer Techs., Inc.*,
   134 F.3d 1054 (11th Cir. 1998) ................................................................ 4

*Palmer v. Convergys Corp.*,
   No. 10 Civ. 145, 2012 WL 425256 (M.D. Ga. Feb. 9, 2012) ....................... 15

*Pomposi v. Gamestop, Inc.*,
   No. 09 Civ. 340, 2010 WL 147196 (D. Conn. Jan. 11, 2010) ....................... 8

*Ragone v. Atl. Video at Manhattan Ctr.*,
   595 F.3d 115 (2d Cir. 2010) ................................................................. 3, 4

*Raniere v. Citigroup Inc.*,
   827 F. Supp. 2d 294 (S.D.N.Y. 2011) ................................................................5, 6, 7

*Saigon Gourmet Rest.*,
   353 NLRB No. 110 (Mar. 9 2009)......................................................................12

*Seus v. John Nuveen & Co., Inc.*,
   146 F.3d 175 (3d Cir. 1998)................................................................................19

*SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.*,
   211 F.3d 21 (2d Cir. 2000)..................................................................................20

*Sure-Tan, Inc. v. NLRB*,
   467 U.S. 883 (1984).............................................................................................11

*Sutherland v. Ernst & Young LLP*,
   768 F. Supp. 2d 547 (S.D.N.Y. Mar. 3, 2011) ............................................ passim

*Sutherland v. Ernst & Young LLP*,
   No. 10 Civ. 3332, 2012 WL 751970 (S.D.N.Y. Mar. 6, 2012) .............................16

*Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*,
   321 U.S. 590 (1944)...............................................................................................3

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
   363 U.S. 574 (1960).......................................................................................21, 22

*Zenith Elec. Corp. v. Exzec, Inc.*,
   182 F.3d 1340 (Fed. Cir. 1999)...........................................................................20

STATUTES

9 U.S.C. § 2..................................................................................................................9

29 U.S.C. § 102.................................................................................................16, 17, 18

29 U.S.C. § 103......................................................................................................passim

29 U.S.C. § 104..........................................................................................................19

29 U.S.C. § 108.....................................................................................................21, 22

29 U.S.C. § 113..........................................................................................................21

29 U.S.C. § 115.....................................................................................................17, 18

29 U.S.C. § 151...................................................................................................10, 15, 17

29 U.S.C. § 153.....................................................................................................13, 14

29 U.S.C. § 157 ................................................................................................10, 17, 18

29 U.S.C. § 158 ...................................................................................................11, 17

29 U.S.C. § 216(b) ......................................................................................................8

29 U.S.C. § 216(c) ......................................................................................................3

Fair Labor Standards Act, 75 Cong. Ch. 676, § 16(b), 52 Stat. 1060, 1069 (1938) ...................8, 9

**OTHER AUTHORITIES**

Elkouri & Elkouri, How Arbitration Works 5 fn. 15 (ABA Section of Labor & Employment Law ed., 1997) (6th Ed.) ...................................................................22

**PRELIMINARY STATEMENT**

The Court should reject Defendants' attempt to extinguish a properly pleaded Fair Labor Standards Act ("FLSA") collective action pursuant to *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). Defs' Br. at 2. *AT&T Mobility* decided a completely different issue: whether a state-based consumer protection class lawsuit was preempted by the Federal Arbitration Act. *AT&T Mobility*, 131 S. Ct. at 1753. The *AT&T Mobility* preemption analysis does not extend to federal wage claims. Moreover, Defendants' position deprives Plaintiff of her substantive right to bring a collective action under the FLSA, violates her rights under Section 7 of the National Labor Relations Act ("NLRA") and the Norris-LaGuardia Act ("Norris LaGuardia"), and grants Defendants *de facto* immunity from FLSA claims by removing their employees' only reasonable means of recovery given the *de minimus* value of their individual claims.

Defendants ask the Court to give them the advantage of an unfair deal. Ms. Ryan had no choice but to yield to an agreement that eliminates her federal rights and grants Defendants *de facto* immunity from liability. Ms. Ryan could not accept the job Defendants offered her without acquiescing to Defendants' arbitration agreement. Defendants never gave Ms. Ryan a copy of the agreement; they printed a web address above the space for her signature on her offer letter indicating where Ms. Ryan could retrieve it on her own time. Ms. Ryan should not be bound to this illegal agreement and should be permitted to litigate her collective action in federal court.

**FACTUAL BACKGROUND**

Plaintiff Tiffany Ryan brought this collective action under the FLSA to challenge Defendants' uniform nationwide policy of classifying all Assistant Branch Managers, who perform customer service and bank teller duties under Defendants' close supervision, as exempt from overtime pay. *See* Declaration of Adam T. Klein ("Klein Decl."), Ex. A (Collective Action

Complaint), ¶¶ 2-3.  Plaintiff alleges that Defendants promulgated this nationwide policy in order to minimize labor costs by violating the FLSA, *id*. ¶ 51, and that Defendants' policies affect at least 200 similarly situated employees.  *Id*. ¶ 44.  Plaintiff seeks monetary and injunctive relief on behalf of herself and a putative collective of other similarly situated employees.

Defendants hired Tiffany Ryan in March 2010.  Among the paperwork Defendants provided to Ms. Ryan at the start of her employment was an offer letter written by Defendants. *See* Declaration of Karen Hart ("Hart Decl."), attached as Exhibit 1 to Declaration of Thomas A. Linthorst ("Linthorst Decl."), Ex. A (Offer Letter).  Following a list of "terms and conditions of this offer," a separate acknowledgement solicited Ms. Ryan's signature as acceptance of an arbitration agreement.  The terms of the agreement were not described in the offer letter, which instead directed Ms. Ryan to Defendants' website.  The acknowledgement indicated that accepting the arbitration agreement was "a condition of my employment with JP Morgan Chase."

The terms of the "Binding Arbitration Agreement" ("BAA") provide in relevant part:

> **CLASS ACTION/COLLECTIVE ACTION WAIVER:** All Covered Claims under this Agreement must be submitted on an individual basis. **No claims may be arbitrated on a class or collective basis**. Covered Parties expressly waive any right with respect to any Covered Claims to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant or member in a class action, collective action, or other representative or joint action, *regardless of whether the action is filed in arbitration or in court*. Furthermore, if a court orders that a class, collective, or other representative or joint action should proceed, in no event will such action proceed in the arbitration forum. Claims may not be joined or consolidated in arbitration with disputes brought by other individual(s), unless agreed to in writing by all parties.

Hart Decl. Ex. B (BAA), ¶ 4 (italics added for emphasis).  "Covered Claims" are defined by the BAA as "all legally protected employment-related claims," including claims under the FLSA. BAA ¶ 2.  Nothing in Defendants' offer letter indicated that, in addition to agreeing to arbitration, the BAA required Ms. Ryan to waive the right to participate in any collective action "regardless of whether the action is filed in arbitration or in court."  BAA ¶ 4.

The BAA also contains a severability clause providing that if the class and collective action waiver is held to be unenforceable, the parties agree to have any class or collective claims heard in court.  BAA ¶ 8 ("If for any reason the class, collective, or representative or joint action waiver is found to be unenforceable, the class, collective, or representative or joint action may only be heard in court and may not be arbitrated under this Agreement.")

## ARGUMENT

### I.        The BAA is Unenforceable Because It Precludes Plaintiff from Vindicating Substantive FLSA Rights.

It is well settled that employees cannot release their substantive rights under the FLSA by private agreement.  *See* 29 U.S.C. § 216(c) (requiring waiver of overtime and minimum wage rights to be supervised by Secretary of Labor); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945) ("No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act."); *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602-03 (1944) (holding that a contract "cannot be utilized to deprive employees of their statutory rights" under the FLSA).

It is likewise well established that arbitration agreements are enforceable only "so long as the prospective litigant may effectively vindicate its statutory cause of action in the arbitral forum."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 637 (1985).  *See also Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000); *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125 (2d Cir. 2010); *Sutherland v. Ernst & Young LLP*, 768 F. Supp. 2d 547, 549-50 (S.D.N.Y. Mar. 3, 2011) (applying "vindication of rights" principle to invalidate collective action waiver in arbitration agreement).  Arbitration of a statutory claim should be compelled only if it is clear that "the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum," such that the statute under which its claims are

3

brought "will continue to serve both its remedial and deterrent function."  *Ragone*, 595 F.3d at

125 (quoting *Mitsubishi*, 473 U.S. at 637).  Where an agreement to arbitrate is a prerequisite to

accepting a job offer, that agreement is enforceable only if "the arbitration preserves the

substantive protections and remedies afforded by the statute."  *DeGaetano v. Smith Barney, Inc*.,

983 F. Supp. 459 (S.D.N.Y. 1997).[1]  Absent this, "the statute's remedial and deterrent function

would be circumvented, and the arbitral forum would lose its claim as a valid alternative to

traditional litigation."  *Sutherland*, 768 F. Supp. 2d at 549 (internal quotes and citations omitted).

In a series of decisions, the Second Circuit recently articulated the interplay between the

vindication of federal statutory rights and *AT&T Mobility*.  *See In re Am. Express Merch. Litig*.,

554 F.3d 300 (2d Cir. 2009) ("*Amex I*"); *In re Am. Express Merch. Litig.*, 634 F.3d 187 (2d Cir.

2011) ("*Amex II*"); *In re Am. Express Merch. Litig.*, 667 F.3d 204 (2d Cir. 2012) ("*Amex III*");

*pet. for reh'g en banc denied*, *In re Am. Express Merch. Litig.*, 681 F.3d 139 (2d Cir. 2012)

("*Amex IV*") (collectively, "*Amex*").  *See also Ragone*, 595 F.3d 115 (2d Cir. 2010).  In the *Amex*

decisions, the Second Circuit found that a class action waiver in an arbitration agreement was

unenforceable because it precluded plaintiffs from enforcing their <u>federal</u> statutory rights.  *Amex*

*III*, 667 F.3d at 213 (citing *Amex I*, 554 F.3d at 320).  In *Ragone*, the Court held unenforceable

an arbitration agreement containing a shortened statute of limitations and a fee-shifting provision

that would "significantly diminish a litigant's rights under Title VII."  *Ragone*, 595 F.3d at 125-

---

[1]    *See also Kristian v. Comcast Corp.,* 446 F.3d 25, 47-48 (1st Cir. 2006) (severing as
unenforceable provision of arbitration agreement limiting availability of treble damages under
antitrust statute); *Hadnot v. Bay, Ltd.,* 344 F.3d 474, 478 n. 14 (5th Cir. 2003) (severing
restriction on available remedies from arbitration agreement after finding that "ban on punitive
and exemplary damages is unenforceable in a Title VII case"); *Paladino v. Avnet Computer
Techs., Inc.,* 134 F.3d 1054, 1062 (11th Cir. 1998) (holding that "[w]hen an arbitration clause has
provisions that defeat the remedial purpose of the statute . . . the arbitration clause is not
enforceable" and that language insulating employer from damages and equitable relief rendered
clause unenforceable).

26.  Contrary to Defendants' contentions, *AT&T Mobility* does not overrule the Second Circuit's

vindication-of-rights precedent.  *AT&T Mobility* addressed only whether a state-law rule holding

class action waivers unconscionable was preempted by the FAA.  *See AT&T Mobility*, 131 S.Ct.

1740.  As the Second Circuit explained,

> "[*AT&T Mobility*] plainly offers a path for analyzing whether a state contract law is
> preempted by the FAA.  Here, however, our holding rests squarely on 'a vindication of
> statutory rights analysis, which is part of the federal substantive law of arbitrability.'"

*Amex III*, 667 F.3d at 213 (quoting *Amex I*, 554 F.3d at 320).  After *AT&T Mobility*, "[i]t remains

the law of the Second Circuit that an arbitration provision which precludes plaintiffs from

enforcing their statutory rights is unenforceable."  *See Chen-Oster v. Goldman, Sachs & Co.*, 785

F. Supp. 2d 394, 409-10 (S.D.N.Y. 2011) (holding class waiver unenforceable as to Title VII

pattern and practice claims), *appeal docketed*, No. 11-5229 (2d Cir. Dec. 13, 2011).

To compel individual arbitration in this case would preclude Ryan from pursuing her

substantive right under 216(b) to bring her claim as a collective action on behalf of at least 200

other similarly situated employees who have also been denied overtime pay.  Thus the BAA's

waiver of substantive FLSA rights is unenforceable.

### A.   The Right to Proceed Collectively Under the FLSA Cannot Be Waived.

Judge Sweet recently held that the right to proceed collectively under the FLSA cannot be

waived because it would preclude plaintiffs from vindicating substantive rights afforded by the

statue.  *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 311, 314 (S.D.N.Y. 2011), *appeal filed*

Dec. 13, 2011.  As the Supreme Court has recognized:

> The legislative history of the Fair Labor Standards Act shows an intent on the part of
> Congress to protect certain groups of the population from substandard wages and
> excessive hours which endangered the national health and well-being of the free flow of
> goods in interstate commerce.  The statue was a recognition of the fact that due to the
> unequal bargaining power as between employer and employee, certain segments of the
> population required federal compulsory legislation to prevent private contracts on their

5

part which endangered national health and efficiency and as a result of the free movement of goods in interstate commerce.

*Brooklyn Savings Bank*, 324 U.S. at 706-07.   The FLSA's collective action provisions are so integral to the statute's remedial and deterrent functions that waiving them has the same effect as waiving substantive FLSA rights.  *See Raniere*, 827 F. Supp. 2d at 314.

The FLSA's collective action provisions "were crafted by not one but over the course of several Congresses to balance the need to incentivize the bringing of often small claims by way of collectivization *in order to ensure the statute's function*, while barring actions 'brought on by employees who had no real involvement in, or knowledge of, the lawsuit.'"  *Raniere*, 827 F. Supp. 2d at 314 (emphasis added) (citing *Arrington v. Nat'l Broad. Co., Inc.*, 531 F. Supp. 498, 500 (D.D.C. 1982).  The collective action mechanism is integral to establishing this balance. Collective action allows for the pooling of resources that makes costly litigation possible, while ensuring that, unlike a Federal Rule of Civil Procedure 23 representative action, the case proceeds on behalf of parties who affirm their participation by opting in.  *See Raniere*, 827 F. Supp. 2d at 314.  In addition, "[t]he particular FLSA collective action mechanism was . . . a Congressional determination regarding the allocation of enforcement costs, as the ability of employees to bring actions collectively reduces the burden born by the public fisc."  *Raniere*, 827 F. Supp. 2d at 314 (citing 83 Cong. Rec. 9264).  Prohibiting the waiver of the collective action also "accords with the Congressional policy of uniformity with regard to the application of the FLSA standards, *see* H. Rep. No. 2182, 75th Cong., 3rd Sess., at 6-7, because an employer is not permitted to gain a competitive advantage because . . . his human resources department [is] more able to ascertain collective action waivers than those of his competitors."  *Raniere*, 827 F. Supp. 2d at 314.  Congress unquestionably intended FLSA rights to be pursued by collective action.  As the Southern District has already explained, "[a]n otherwise enforceable arbitration

agreement should not become the vehicle to invalidate the particular Congressional purposes of

the collective action provision and the policies on which that provision is based." *Id.*

Contrary to Defendants' contentions, the FLSA's collective action provisions cannot be

recast as a waivable procedural right just to save Defendants' collective-waiver agreement.

*Raniere*, 595 F. Supp. 2d at 313.  *See* Defs' Br. at 7-8.  As the Court acknowledged in *Raniere*:

> It is not enough to respond that such a waiver should be upheld in the name of the broad
> federal policy favoring arbitration, simply because the waiver was included in an
> arbitration agreement. An otherwise enforceable arbitration agreement should not
> become the vehicle to invalidate the particular Congressional purposes of the collective
> action provision and the policies on which that provision is based.

*Id.* at 314.  None of Defendants' remaining supporting authority addresses this critical point.  *See*

Defs' Br. at 7-8.  *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005)

concerned state law, is outside of the Second Circuit, and does not address the vindication of

federal statutory rights analysis.  *Id.* at 1378.   The other decisions Defendants cite, Defs. Br. at

7-8,  rely on the premise that *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) held

that federal collective action rights could be waived – a premise expressly rejected by the Second

Circuit in *Amex I.  See Raniere*, 827 F. Supp. 2d at 311.[2]  The Second Circuit has twice

recognized that *Gilmer* leaves the enforceability of a waiver of collective action rights under 29

U.S.C. § 216(b) untouched.  *See Amex I*, 554 F.3d at 314 ("The statement in *Gilmer* that the

arbitration clause would be enforceable 'even if' class remedies were available . . . is dicta that

does not apply here."); *Amex II*, 634 F.3d at 196 (same).[3]

_____

[2]     *Gilmer* held that claims under the Age Discrimination in Employment Act ("ADEA"),
which incorporates 29 U.S.C. § 216(b), may be arbitrated.  But the agreement at issue in *Gilmer*
did not contain a waiver of class or collective action rights.  In fact, the Supreme Court noted in
*Gilmer* that class arbitrations *were* available.  *Gilmer*, 500 U.S. at 32.
[3]     The other cases Defendants cite are equally unpersuasive because they do not decide the
issue of the waiver of collective action rights.  *See Long John Silver's Rest., Inc. v. Cole*, 514
F.3d 345, 353 (4th Cir. 2008) (upholding a class award using procedures different than 29 U.S.C.

Finally, *LaVoice v. UBS Financial Services., Inc*., No. 11 Civ. 2308, 2012 WL 124590

(S.D.N.Y. Jan. 13, 2012) was decided prior to *Amex III* and the Second Circuit's resolution of the

interplay between *AT&T Mobility* and the vindication of statutory rights analysis under

*Mitsubishi*.[4] *LaVoice* also failed to address Congressional intent in drafting the FLSA's unique

collective action provisions in its vindication-of-rights analysis that is the basis of the *Raniere*

decision.  *LaVoice*, 2012 WL 124590, at *3.

### B.    *Raniere*'s Application of FLSA Legislative History is Sound.

Defendants construct a false history of the FLSA to challenge *Raniere*'s holding that

FLSA collective action provisions cannot be waived.  Defendants claim that "when the FLSA

was originally enacted in 1938 . . . the law did ***not*** include a right to pursue claims in a collective

action."  Defs' Br. at 11.  This is simply false.  *Raniere*'s examination of the FLSA's legislative

history quoted the original 1938 law, which provided that:

> Action to recover such liability may be maintained in any court of competent jurisdiction
> by any one *or more* employees for and in behalf of himself *or themselves and other*
> *employees similarly situated*, or such employee or employees may designate an agent or
> representative to maintain such action for and in behalf of all employees similarly
> situated.

Fair Labor Standards Act, 75 Cong. Ch. 676, § 16(b), 52 Stat. 1060, 1069 (1938) (emphasis

added).  Defendants go on to argue that the 1947 amendments to the FLSA, which created the

---

§ 216(b) – an entirely different issue than whether an arbitration agreement that requires a waiver
of rights in the first instance is enforceable); *D'Antuono v. Serv. Road Corp*., 789 F. Supp. 2d
308, 341 (D. Conn. 2011) ( an arbitration clause was not unconscionable where Defendants
conceded that they would not seek to enforce cost- and fee-shifting provision); *Pomposi v.
Gamestop, Inc*., No. 09 Civ. 340, 2010 WL 147196, at *8 (D. Conn. Jan. 11, 2010) (decided
under Connecticut unconscionability law, relying on *Adkins*, *Carter, Horenstein*, and *Caley*,
which applied reasoning that, as discussed above, has been rejected by the Second Circuit).
[4]      "*Concepcion* holds that the Federal Arbitration Act ("FAA") preempts state laws hostile
to arbitration, and focuses its analysis on preemption issues. In contrast, analysis in *Amex
III* rests squarely on a vindication of statutory rights analysis—an issue untouched
in *Concepcion*."  *Amex IV*, 681 F.3d at 139.

requirement that employees give written consent to join a case under the FLSA, *see* 29 U.S.C. § 216(b), demonstrate that Congress did not intend to allow employees to proceed collectively. In reality, the FLSA has always allowed an employee to sue "for and in behalf of . . . other employees similarly situated." 75 Cong. Ch. 676, § 16(b), 52 Stat. 1060, 1069 (1938). Defendants' distortion of that history should be rejected.

      **C.     The BAA's Severability Clause Requires that Ryan's Case Proceed in Court.**

      In light of the above, the BAA's collective action waiver is unenforceable. The BAA contains a severability clause that requires that any collective action proceed in court. BAA ¶ 8 ("If for any reason the class, collective, or representative or joint action waiver is found to be unenforceable, the class, collective, or representative or joint action may only be heard in court and may not be arbitrated under this Agreement."). The Court should strike the illegal collective action waiver and allow this action to proceed in federal court.

**II.    BAA Is Unenforceable Because It Is Contrary to Federal Policy.**

      Courts should not enforce an arbitration agreement that is invalid or unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When faced with a motion to compel arbitration, a court must consider all "[g]enerally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 682 (1996). Longstanding precedent "leave[s] no doubt that illegal promises will not be enforced in cases controlled by the federal law." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982). In *In re D. R. Horton, Inc.*, 357 NLRB No. 184 (Jan. 3, 2012), the National Labor Relations Board ("NLRB" or "the Board") held that agreements such as the BAA illegally interfere with employees' rights under the NLRA to engage in concerted activity. The Board's interpretation of the NLRA concerned language that is identical to Norris-

LaGuardia.  Norris-LaGuardia specifically states that "any . . . undertaking or promise in conflict

with the public policy [of protecting employee concerted activity] . . . shall not be enforceable in

any court of the United States . . . ."  29 U.S.C. § 103.  The BAA violates the NLRA and Norris-

LaGuardia and is unenforceable.

A.      **The BAA Violates the National Labor Relations Act.**

The NLRA was passed to address "inequality of bargaining power between employees . .

. and employers . . . [which] tends to aggravate recurrent business depressions, by depressing

wage rates . . . ."  29 U.S.C. § 151.  To remedy this problem, the NLRA states that "[i]t is hereby

declared to be the policy of the United States to . . . protect[] the exercise by workers of full

freedom of association . . . for the purpose of negotiating the terms and conditions of their

employment *or other mutual aid or protection*." *Id.* (emphasis added).  For over 40 years, the

Supreme Court has recognized that "mutual aid or protection" includes participating in class or

collective actions that challenge employment practices.  *See Eastex, Inc. v. N.L.R.B.*, 437 U.S.

556, 565-66 (1978) (recognizing that protected concerted activity encompasses action outside of

collective bargaining, and specifically includes "seek[ing] to improve working conditions

through resort to administrative and judicial forums").  Section 7 of the NLRA, 29 U.S.C. § 157,

protects employees, whether union or non-union, who join or initiate a multiple-plaintiff lawsuit,

*See In re 127 Restaurant Corp.*, 331 NLRB 269, 269 (2000) (lawsuit by 17 employees was

protected activity), or when a single employee initiates group action by bringing a collective

action as a lead plaintiff.  *See Meyers Indus.*, 281 NLRB 882, 885 (1986), *aff'd. sub nom*. *Prill v.*

*NLRB,* 835 F.2d 1481 (D.C. Cir. 1987), cert. denied 487 U.S. 1205 (1988).

In *In re D. R. Horton, Inc.*, 357 NLRB No. 184 (Jan. 3, 2012), the NLRB followed these

precedents to conclude that employers violate the NLRA when they "requir[e] employees to

waive their right to collectively pursue employment-related claims in all forums, arbitral and judicial," *Id.* at *17, and held that participation in class or collective actions, by union or non-unionized employees, that challenge working conditions is "at the core of what Congress intended to protect by adopting the broad language of Section 7." *Id.* at *4.  Employers who require their employees to waive these rights violate the NLRA.  *Id.* at *6 (citing *J. I. Case Co. v. NLRB,* 321 U.S. 332, 337 (1944) ("Wherever private contracts conflict with [the Board's] functions [of preventing unfair labor practices], they obviously must yield or the [National Labor Relations] Act would be reduced to a futility.")).

The NLRB held that Section 8(a)(1) of the NLRA, 29 U.S.C. § 158(a)(1), which prohibits employers from interfering with, restraining, or coercing employees who exercise their rights to engage in concerted activity, prohibits employers from imposing waivers of those rights as a condition of employment – including the right to proceed collectively under the FLSA.  This prohibition is at the core of the NLRA's protections.  *Id.* at *7.  Employer agreements like the BAA that force employees to abandon the right to proceed collectively in arbitration *or* in court interfere with employees' protected concerted activity and violate the NLRA.  *Id.* at *7-8.

## B.    The NLRB's Decision in *D.R. Horton* is Entitled to "the Greatest Deference."

The NLRB's holding in *D.R. Horton* was squarely within the agency's core expertise and administrative function of interpreting the NLRA, and is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  The Supreme Court has long recognized that the Board has authority to interpret the NLRA, that those interpretations are "entitled to considerable deference," and that courts should uphold "any interpretation [by the Board] that is reasonably defensible."  *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 891 (1984).  So long as the Board's interpretation "is rational and consistent with the

statute," courts should not intrude on the Board's administrative function. *NLRB v. United Food & Commercial Workers Union, Local 23, AFL-CIO*, 484 U.S. 112, 123 (1987).  The Board's policy determinations in enforcing the NLRA through adjudication "merit the greatest deference."  *ABF Freight Sys., Inc. v. NLRB*, 510 U.S. 317, 324 (1994).

The NLRB's interpretation that Section 7 of the NLRA protects participation in class and collective actions is consistent with the Board's own precedent, and has been followed by multiple courts.  *See Saigon Gourmet Rest.*, 353 NLRB No. 110, at *1 (Mar. 9 2009) ("[A] wage and hour lawsuit [is] clearly protected concerted activity."); *Brady v. Nat'l Football League*, 644 F.3d 661, 673 (8th Cir. 2011) ("[A] lawsuit filed . . . by a group of employees to achieve more favorable terms or conditions of employment is 'concerted activity' under § 7 of the National Labor Relations Act."); *Leviton Mfg. Co., Inc. v. NLRB*, 486 F.2d 686, 689 (1st Cir. 1973) ("[T]he filing of a labor related civil action by a group of employees is ordinarily a concerted activity protected by § 7 . . . .").  Likewise, the Board's interpretation of Section 8(a)(1)'s prohibition on interference with Section 7 activity is entitled to deference from this Court.

Defendants claim that the NLRB's holding in *D.R. Horton* is not entitled to deference because the agency acted outside its expertise by interpreting the FAA and the Norris-LaGuardia Act.  Both claims are inaccurate.  The NLRB in *D.R. Horton* adjudicated an administrative unfair labor practice complaint.  It was not faced with the task of enforcing an arbitration agreement or considering contract defenses, and therefore had no occasion to interpret the FAA.  The NLRB only considered whether its interpretation of the NLRA conflicted with the FAA, and concluded that it did not.  *D.R. Horton*, 357 NLRB No. 184, at *13-14.  This reasoning did not require the NLRB to interpret the FAA, and does not invalidate the Board's interpretation of the NLRA.

The NLRB also did not interpret the Norris-LaGuardia Act.  As discussed below, Norris-

12

LaGuardia contains language nearly identical to the NLRA.  The Board in *D.R. Horton* discussed

that language as a guide to statutory construction.  *See Nat'l Woodwork Mfrs. Ass'n v. NLRB*,

386 U.S. 612, 620-21 (1967) (examining history of labor law as a guide to interpretation).

Defendants' argument that the Board interpreted Norris-LaGuardia is simply wrong.

### 1.    Courts Follow *D.R. Horton*.

Courts have followed *D.R. Horton*'s reasoning to reject class waivers in employment

agreements that violate the NLRA.  *Owen v. Bristol Care, Inc.*, No. 11 Civ. 4258, 2012 WL

1192005, at *4 (W.D. Mo. Feb. 28, 2012), distinguished class waivers in the employment

context from the consumer agreements at issue in *AT&T Mobility*, and noted that because such

waivers implicate substantive rights under a federal statute, they should not be enforced.

Similarly, *Herrington v. Waterstone Mortgage Corp.*, No. 11 Civ. 779, 2012 WL 1242318 (W.D.

Wis. Mar. 16, 2012), recognized that "courts must give considerable deference to the Board's

interpretations of the NLRA," *id.* at *5, holding that "an arbitration agreement may not require a

party to 'forgo the substantive rights afforded by the statute.'"  *Id.* at *4 (quoting *Gilmer v.

Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)).  It distinguished *AT&T Mobility*, finding

that it "is not on point because the class action waiver in that case did not conflict with the

substantive right of a federal statute."  *Id.* at *6.

### 2.    *D.R. Horton* Was Validly Decided.

Defendants conveniently quote one portion of the NLRA to claim that the Board lacked a

quorum when it decided *D.R. Horton*: "three members of the Board shall, at all times, constitute

a quorum of the Board . . . ." 29 U.S.C. § 153(b).  But Defendants do not bring to the Court's

attention the last clause of the sentence: ". . . except that two members shall constitute a quorum

of any group designated pursuant to the first sentence hereof." *Id.*  The NLRA clearly indicates

that two members constitute a quorum of a three-member panel of the NLRB, and the Board has a long history of deciding cases with two members, as courts have long recognized and approved.  In *New Process Steel, L.P. v. NLRB*, 130 S. Ct. 2635  (2010), the Supreme Court repeatedly noted the Board's practice of having two members decide cases when one member of a three-member group was recused.  *Id.* at 2641 (". . . the Board has throughout its history allowed two members of a three-member group to issue decisions when one member of a group was disqualified from a case.").  The Supreme Court concluded that "[t]he delegation clause still operates to allow the Board to act in panels of three, and the group quorum provision still operates to allow any panel to issue a decision by only two members if one member is disqualified."  *Id*. at 2644.  This is exactly what the Board did in *D.R. Horton*.  Member Hayes recused himself from the decision of the case, which was decided by members Pearce and Becker.  This constituted a valid quorum under 29 U.S.C. § 153(b).

### 3.     Defendants' Other Complaints About *D.R. Horton* are Baseless.

Defendants proffer a range of other meritless arguments against *D.R. Horton* that the Court should reject.  First, Defendants simply argue that *D.R. Horton* was incorrect to hold that engaging in group litigation to remedy working conditions is a substantive right under the NLRA.  Defs' Br. at 23-24, citing the Second Circuit's opinion in *Amex I*.  But the court in *Amex I* was not faced with the question of whether a class waiver violated Sections 7 and 8 of the NLRA, both of which clearly protect substantive rights.  The Board in *D.R. Horton* was faced with that question, and its holding is entitled to deference.

Next, Defendants suggest *D.R. Horton* creates a danger of retroactive enforcement, citing an earlier General Counsel Memorandum on the subject.  This overstates the Memorandum's importance and mischaracterizes its content – but more importantly, it misses the point that

Defendants continued to maintain and attempted to enforce their class waiver after *D.R. Horton* was decided.  There is thus no retroactive effect that should concern the Court.[5]

Defendants claim *D.R. Horton* represents "rank favoritism for employees who decide to be represented by a union" because it would allow unions to waive the right to engage in class actions.  The argument that "favoritism" of unions is inconsistent with the NLRA ignores the law's stated policy: to "encourage[] . . . collective bargaining."  29 U.S.C. § 151.  As the Board pointed out in *D.R. Horton*, the NLRB has long recognized that employees acting collectively through their unions may waive collective rights in ways individuals cannot.  *See Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 280 (1956) (union could agree not to strike in exchange for other concessions); *14 Penn Plaza LLC v. Pyett,* 556 U.S. 247 (2009) (union may waive its members' rights to bring employment-related claims in court in collective bargaining).

The majority of the cases Defendants cite that failed to follow *D.R. Horton* are inapposite or wrongly decided.  *Palmer v. Convergys Corp.*, No. 10 Civ. 145, 2012 WL 425256 (M.D. Ga. Feb. 9, 2012) and *Johnmohammadi v. Bloomingdale's, Inc.,* No. 11 Civ. 6434, 2012 WL 3144882 (C.D. Cal. Feb. 29, 2012) distinguished *D.R. Horton* on the facts.  Other cases analyzed *D.R. Horton* in different circumstances.  *Delock v. Securitas Security Services USA, Inc.,* No. 11 Civ. 520, 2012 WL 3150391, at *4-5 (E.D. Ark. Aug. 1, 2012) and *Nelsen v. Legacy Partners Residential, Inc.,* 144 Cal. Rptr. 3d 198, 213-14 (2012) analyzed whether Congress expressly

---

[5]        Even if retroactivity were a concern, the General Counsel Memorandum cited by Defendants reviewed existing Board law and concluded that "[a] mandatory arbitration agreement that could reasonably be read by an employee as prohibiting him or her from joining with other employees to file a class action lawsuit is unlawful."  Memorandum GC 10-06 at 7 (Jun. 16, 2010).  It nonetheless counseled prosecutorial discretion due to concerns over conflict with *Gilmer.*  Prosecutorial discretion, however, does not represent "settled law," as Defendants argue.  Defs' Br. at 23.  *See In re Int'l Ass'n of Machinists & Aerospace Workers*, 355 NLRB No. 174 (Aug. 27, 2010) ("The General Counsel's exercise of prosecutorial discretion [about a prior subject] does not insulate it from subsequent scrutiny.")

intended the NLRA to override the FAA, not the arbitration agreements' illegality under the NLRA as a defense to contract enforcement.  Defendants also cite cases have simply failed to accord *D.R. Horton* administrative deference.[6]

### 4.     The NLRB Will Rule on the BAA's Legality.

Plaintiff notes that, concurrently with this motion, the legality of Defendants' BAA is being challenged in an Unfair Labor Practice charge she has filed with the New York Regional Office of the NLRB.  *Tiffany Ryan and JPMorgan Chase*, Charge No. 02-CA-88471.  To the extent this Court declines to rule on the legality of the BAA in light of *D.R. Horton*, the Court may defer to the NLRB's primary jurisdiction to determine whether the BAA violates federal policy.  *See Glaziers & Glassworkers Local Union No. 767 v. Custom Auto Glass Distrib.,* 689 F.2d 1339, 1342 (9th Cir. 1982) ("the doctrine of primary jurisdiction is a recognition of congressional intent to have matters of national labor policy decided in the first instance by the National Labor Relations Board").

### C.     The BAA violates the Norris-LaGuardia Act

The BAA is unenforceable because it violates the Norris-LaGuardia Act's prohibition on enforcing agreements that conflict with the policy of protecting workers from interference with "concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. §§ 102, 103.  Like the NLRA, Norris-LaGuardia provides employees a substantive right to engage in concerted activity to improve working conditions and to be free from employer interference in doing so.  29 U.S.C. § 102.  Furthermore, Norris-LaGuardia, which post-dates the

---

[6]     *LaVoice* is the only case in this District that has considered *D.R. Horton*, although it provided no analysis*. Sutherland v. Ernst & Young LLP*, No. 10 Civ. 3332, 2012 WL 751970, at *2 n.1 (S.D.N.Y. Mar. 6, 2012) cited *D.R. Horton* in a footnote, saying it cast doubt on an employer's prospects on appeal of a decision declining to enforce an arbitration agreement on other grounds, but did not analyze it at length.

FAA by seven years, expressly repeals "[a]ll acts and parts of acts in conflict with" its

provisions.  29 U.S.C. § 115.  Norris-LaGuardia therefore both provides an alternative basis for

holding that the BAA violates federal labor policy and explicitly requires that the FAA yield to

it.

    The 1932 Norris-LaGuardia Act contained the predecessor language that was later

codified in the National Labor Relations Act.  Among these provisions is the following

declaration of public policy:

> Whereas . . . the individual unorganized worker is commonly helpless to exercise actual
> liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable
> terms and conditions of employment, . . . it is necessary that . . . he shall be free from the
> interference, restraint, or coercion of employers of labor, or their agents, in . . . concerted
> activities for the purpose of collective bargaining or other mutual aid or protection . . . .

29 U.S.C. § 102.  These provisions mirror the NLRA's recognition that employers and

employees have unequal bargaining power, 29 U.S.C. § 151 ("Employees . . . do not possess full

freedom of association or actual liberty of contract . . . ."), its protection of "concerted activit[y]"

and "mutual aid," 29 U.S.C. § 157, and its prohibition of interference, restraint, or coercion, 29

U.S.C. § 158(a)(1).  Substantively, Norris-LaGuardia provides that "any . . . undertaking or

promise in conflict with the public policy declared in section 102 of this title, is declared to be

contrary to the public policy of the United States, [and] shall not be enforceable in any court of

the United States . . . ."  29 U.S.C. § 103.

    In *D.R. Horton*, the NLRB construed §§ 157 and 158(a)(1) of the NLRA *in pari materia*

with §§ 102 and 103 of Norris-LaGuardia and held that a waiver of all rights to participate in a

class or collective action, such as that contained in the BAA, "lies at the core" of the NLRA's

prohibitions.  *D.R. Horton*, 357 NLRB No. 184 at *5-8.  Though the NLRA's analysis of Norris-

LaGuardia is not itself entitled to deference, its analysis of the NLRA concerned nearly identical

language.  *Compare* 29 U.S.C. § 158(a)(1) ("It shall be an unfair labor practice for an employer .

. . to *interfere with, restrain, or coerce* employees in the exercise of the rights guaranteed in

section 157 of this title . . . .") (emphasis added), *and* 29 U.S.C. § 157 ("Employees shall have

the right . . . to engage in other *concerted activities for the purpose of collective bargaining or

other mutual aid or protection* . . . .") (emphasis added), *with* 29 U.S.C. § 102 ("[Employees]

shall be free from the *interference, restraint, or coercion* of employers of labor, or their agents,

in . . . *concerted activities for the purpose of collective bargaining or other mutual aid or

protection* . . . .") (emphasis added).  The NLRB's conclusion that class and collective action

waivers violate Norris-LaGuardia is therefore strongly persuasive.

    Norris-LaGuardia issued a broad declaration of federal labor policy, and was intended to

override "[a]ll acts and parts of acts" that conflict with its provisions.  29 U.S.C. § 115.  This

includes the FAA, passed in 1925.[7]  This explicit provision means that, to the extent the FAA

could be read as requiring individual arbitration, that requirement must yield to the prohibition

on enforcing agreements that conflict with the federal policy of protecting employees' concerted

activity against employer interference.

    The court in *Morvant v. P.F. Chang's China Bistro, Inc.*, No. 11 Civ. 5405, 2012 WL

1604851, at *10 (N.D. Cal. May 7, 2012) incorrectly held that Norris-LaGuardia did not apply to

class or collective action waivers in arbitration agreements, because "the Norris–LaGuardia Act

specifically defines those contracts to which it applies. 29 U.S.C. § 103(a), (b). An agreement to

---

[7]     The fact that the FAA was reenacted in 1947 has no impact on Norris-LaGuardia's
express repeal, as the court in *Delock*, 2012 WL 3150391, at *5, mistakenly concluded.  The
*Delock* court apparently believed that the only ground for holding that Norris-LaGuardia
overrides the FAA is the relative dates of the two statutes.  It overlooked the fact that Norris-
LaGuardia *expressly* declares that other acts in conflict with it are repealed, regardless of the date
of enactment.

arbitrate is not one of those contracts . . . ."  This holding reads the section cited incorrectly.

Section 103 states that "[a]ny undertaking or promise, such as is described in this section, *or any*

*other undertaking or promise in conflict with the public policy declared in section 102 of this*

*title*, is declared to be contrary to the public policy of the United States, [and] shall not be

enforceable . . . ."  29 U.S.C. § 103 (emphasis added).  The types of agreements specified in §

103 were thus not intended to limit Norris-LaGuardia's more general prohibition of contracts

that restrict concerted activity.  Furthermore, other sections of Norris-LaGuardia explicitly

*include* cases related to pending litigation:

> No court of the United States shall have jurisdiction to issue any restraining order or
> temporary or permanent injunction in any case involving or growing out of any labor
> dispute to prohibit any person or persons participating or interested in such dispute (as
> these terms are herein defined) from doing, whether singly or in concert, any of the
> following acts . . . .  By all lawful means aiding any person participating or interested in
> any labor dispute who is being proceeded against in, or is prosecuting, any action or suit
> in any court of the United States or of any State . . . .

29 U.S.C. § 104.  While this section only bars injunctive relief, it suggests that Norris-LaGuardia

specifically considers litigation related to labor disputes a form of protected mutual aid.

In *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 184 (3d Cir. 1998), the Third Circuit

held that an arbitration clause in a securities brokerage agreement did not waive substantive

statutory rights so as to violate Norris-LaGuardia.  *Seus* is distinguishable.  The agreement in

*Seus* did not explicitly require the plaintiff to waive her right to participate in class or collective

actions.  That right, which is a form of concerted activity, is a substantive right that the BAA

interferes with.  *See D.R. Horton* at *7-8.

D.        **The FAA Does Not Conflict with the NLRA or Norris-LaGuardia Act.**

The handful of district courts that have considered *D.R. Horton*'s holding as a defense to

contract enforcement under §2 of the FAA have split over whether the case conflicts with the

Supreme Court's interpretation of the FAA in *AT&T Mobility*, 131 S. Ct. 1740  (2011).

*Compare Morvant*, 2012 WL 1604851, at *11-12 *and Jasso v. Money Mart Express, Inc.*, No. 11

Civ. 5500, 2012 WL 1309171, at *9 (N.D. Cal. Apr. 13, 2012) (finding a conflict) *with*

*Herrington*, 2012 WL 1242318, at *6 *and Owen*, 2012 WL 1192005, at *4 (W.D. Mo. Feb. 28,

2012) (distinguishing *AT&T Mobility* and finding no conflict).  There is no inherent conflict

between the NLRA, Norris-LaGuardia, and the FAA.  *Herrington* and *Owen* correctly concluded

that employment agreements are distinguishable from the consumer arbitration agreements at

issue in *AT&T Mobility*, and that a waiver of substantive rights in an employment arbitration

agreement is unenforceable.  *Herrington* at *6 ("the class action waiver in [*AT&T Mobility*] did

not conflict with the substantive right of a federal statute."); *Owen* at *4 ("In the employment

context, waivers of class arbitration are not permissible.").  This conclusion follows the canon of

statutory construction that holds that courts should interpret statutes so as to "give effect to both .

. . ." *Zenith Elec. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1347 (Fed. Cir. 1999) (quoting *U.S. v.*

*Borden Co.,* 308 U.S. 188, 198 (1939)) (internal quotation marks omitted).

When faced with two federal statutes that arguably conflict, "[C]ourts are not at liberty to

pick and choose among congressional enactments . . . it is the duty of the courts, absent a clearly

expressed congressional intention to the contrary, to regard each as effective."  *Morton v.*

*Mancari*, 417 U.S. 535, 551 (1974).  Where a conflict between two laws is unavoidable, a court

should minimize the conflict by "adopt[ing] the interpretation that preserves the principal

purposes of each." *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.*, 211

F.3d 21, 27-28 (2d Cir. 2000).  The FAA, NLRA, and Norris-LaGuardia can be so interpreted.

The FAA was passed to overcome "judicial hostility to arbitration agreements." *AT&T Mobility* at 1745.  The Court in *AT&T Mobility* held that the FAA preempted California's "*Discover Bank*" rule, which invalidated class action waivers in consumer agreements as unconscionable, because the rule relied on "the uniqueness of an agreement to arbitrate" as grounds for nonenforcement.  *AT&T Mobility* at 1747 (quoting *Perry v. Thomas,* 482 U.S. 483, 493 n.9 (1987).  The Court based its holding on the premise that class action procedures are incompatible with consumer arbitration, citing the average length of consumer arbitrations before the American Arbitration Association.  *AT&T Mobility* at 1751.  *D.R. Horton* did not concern consumer arbitration agreements.  The NLRB's holding was based on its expertise in federal labor policy, including the Board's long familiarity with and accommodation of arbitration in employment.  The Board pointed out in *D.R. Horton* that arbitration is "a central pillar of Federal labor relations policy."  *D.R. Horton* at *17.

Similarly, Norris-LaGuardia reflects a federal labor policy that encourages arbitration agreements, so long as they do not result in waivers of the right to engage in concerted activity. Unlike commercial arbitration, Norris-LaGuardia suggests that arbitration of employment disputes should *not* be limited to strictly individual resolution.  Norris-LaGuardia encourages arbitration as an alternative to labor disputes.  *See* 29 U.S.C. § 108.  However, the envisioned arbitration relates to disputes involving *groups* of employees:

> A case shall be held to involve or to grow out of a labor dispute when the case involves *persons* who . . . are *employees* of the same employer . . . whether such dispute is . . . between one or more employers or associations of employers *and one or more employees or associations of employees* . . . .

29 U.S.C. § 113 (emphasis added).  Congress has long assumed that employee concerted activity is compatible with a policy favoring arbitration.  These policies can be harmonized by

recognizing that in employment, collective arbitration is not in tension with the FAA.

The Supreme Court has recognized that "arbitration of labor disputes has quite different functions from arbitration under an ordinary commercial agreement." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 578 (1960). Group arbitration has historically been common in employment. *See* Elkouri & Elkouri, How Arbitration Works 5 fn. 15 (ABA Section of Labor & Employment Law ed., 1997) (6th Ed.) ("Commercial arbitration grew up as an alternative to court action, while labor arbitration evolved primarily as a substitute for strikes."). Employment arbitration has frequently included arbitration over group grievances affecting large numbers of workers. *See, e.g., United Steelworkers*, 363 U.S. at 575 (arbitration covering multiple employees whose work was contracted out to another employer).

Class-wide arbitration of employment disputes is compatible with the FAA. *AT&T Mobility* does not present a latent conflict between the FAA and the NLRA or Norris-LaGuardia; arbitration can and should be enforced so as to effectuate all three statutes. This Court should defer to the NLRA's determination that class waivers in employment arbitration agreements – not arbitration agreements per se – violate employees' substantive rights under the NLRA. The same interpretation holds true of the Norris-LaGuardia Act.

The Supreme Court's holding in *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012) does not require a different result. The question before the Supreme Court in *Compucredit* was whether Congress intended to create an unwaivable right to sue under the Credit Repair Organizations Act (CROA). *Id.* at 669-70. The Court held that a Congressional intent to preclude arbitration was not apparent in the text or history of the CROA. *Id.* at 672. This analysis is not implicated in the present case. Plaintiff does not argue that Congress intended the NLRA or Norris-LaGuardia to preclude arbitration of employment disputes; in fact,

both laws encourage arbitration of employment disputes.  *See* 29 U.S.C. § 108; *United Steelworkers,* 363 U.S. at 578 ("The present federal policy is to promote industrial stabilization …. A major factor in achieving industrial peace is . . . arbitration . . . .").  Instead, the NLRA, Norris-LaGuardia, and FAA should be read to effectuate all three laws.  This requires deference to the NLRB's holding that employers "violate[] Section 8(a)(1) [of the NLRA] by requiring employees to waive their right to collectively pursue employment-related claims in all forums, arbitral and judicial," *D.R. Horton* at *17, and recognizing that the same is true of the Norris-LaGuardia Act's prohibition on enforcing contracts that conflict with federal labor policy.

A reading of *AT&T Mobility* that gives effect to both the FAA and the NLRA would require this Court to decline enforcement of the collective action waiver, but enforce the remainder of the BAA according to its terms.  However, the BAA itself provides a severability clause that instead requires that any collective action proceed in court.  BAA ¶ 8 ("If for any reason the class, collective, or representative or joint action waiver is found to be unenforceable, the class, collective, or representative or joint action may only be heard in court and may not be arbitrated under this Agreement.").  Accordingly, Plaintiff requests that the Court strike the collective action waiver and allow this action to proceed before it.

## III.   The BAA is Unenforceable Because It Has the Effect of Immunizing Chase From FLSA Claims.

In the Second Circuit, class or collective action waivers are unenforceable when the practical effect of the waiver is to immunize the defendant from liability because litigating individual claims is cost-prohibitive. *See Amex I*, 554 F. 3d at 321; *Amex II,* 634 F.3d at 197-98 (upholding rejection of class waiver in *Amex I*); *Amex III*, 667 F.3d at 219 (same); *Sutherland*, 768 F. Supp. 2d at 550 (applying *Amex I* to invalidate collective action waiver that deprived employee of ability to enforce FLSA rights). This determination must be made on a case-by-case

basis considering the totality of the circumstances, including:

> [1] the fairness of the provisions, [2] the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, [3] the ability to recover attorneys' fees and other costs and thus obtain legal representation to prosecute the underlying claim, [4] the practical [e]ffect the waiver will have on a company's ability to engage in unchecked market behavior, and [5] related public policy concerns.

*Amex I*, 554 F.3d at 321 (quoting *Dale v. Comcast Corp.*, 498 F.3d 1216, 1224 (11th Cir. 2007)).

In the *Amex* cases,[8] the Second Circuit determined that the plaintiffs' claims could not reasonably be pursued as individual actions when taking into account the associated costs of litigation, based in part on evidence showing that the plaintiffs' individual statutory claims ranged in potential recovery from a median of approximately $5,252. *See Amex III*, 667 F.3d at 214 (Sometimes, "the class action device is the only economically rational alternative when a large group of individuals or entities has suffered an alleged wrong, but the damages due to any single individual or entity are too small to justify bringing an individual action"); *Amex I*, 554 F.3d at 317, 321. Enforcement of the class waiver would have granted the defendant "de facto immunity" by removing the plaintiffs' only reasonable means of recovery:

> [P]laintiffs have demonstrated the necessity of some class mechanism in order to bring their claims against Amex. This demonstration . . . depends upon a showing that the size of the recovery received by *any* individual plaintiff will be too small to justify the expenditure of bringing an individual action.

*Id*. at 320 (emphasis in original). Accordingly, where the size of recovery of any potential member of the class would be too small to justify the expenditure of bringing an individual action, the class waiver is unenforceable.

A recent Southern District of New York decision denied a motion to compel arbitration of the overtime claims of Ernst & Young accountants on an individual basis because the collective action waiver was unenforceable under the *Amex* test. *See Sutherland*, 768 F. Supp.

---

8       As discussed above, *AT&T Mobility* does not supercede the *Amex* cases because it addressed only the FAA's preemption of state unconscionability law.

2d at 548-50.  The court considered other *Amex I* factors that would affect the individual

plaintiff's ability to vindicate her rights in an individual action.  *Id*. at 551-53.  Therefore, under

the totality of the circumstances, the practical effect of the collective waiver in *Sutherland*, as

here, was to preclude vindication of statutory rights under the FLSA.

      The Court should similarly deny enforcement of Chase's collective action waiver.  Ms.

Ryan's salary at Chase ranged from $37,000 to $38,000.  The cost of individual arbitration

compared to the possible monetary recovery would preclude Ms. Ryan and from enforcing her

FLSA rights.  Ms. Ryan's individual net backpay recovery, pre-tax, is likely to be as little as

$4,908.75, plus an amount equal to that in liquidated damages, if overtime liability is calculated,

as Defendants will likely contend, using a fluctuating workweek calculation and a two-year

limitations period for non-willful violations of the FLSA.  (*See* Klein Decl. ¶¶ 9-13).  While Ms.

Ryan will pursue higher damages in this action, she must consider less favorable potential

outcomes, as well as the risk of losing, when deciding whether to pursue her claims individually.

This possible recovery (or even one several multiples higher) is well below what would

reasonably justify the cost of pursuing individual arbitration.  The attorneys' fees incurred in the

litigation already exceed this recovery by multiples.  (*See* Klein Decl. ¶¶ 16-17).  Compared to a

possible recovery of $4,908.75, neither Ms. Ryan nor any potential member of the collective

would pursue individual claims against Defendants.  *See Sutherland*, 768 F. Supp. 2d at 550.

The collective action waiver thus immunizes Defendants from liability and cannot be enforced.

## CONCLUSION

      For the foregoing reasons, Plaintiff respectfully requests that the Court deny

Defendants' Motion to Dismiss, or in the Alternative, to Stay Action and Compel Arbitration.


Dated:       September 25, 2012
           New York, New York

Respectfully submitted,

**OUTTEN & GOLDEN LLP**
By:

/s/ Adam T. Klein
   Adam T. Klein

**OUTTEN & GOLDEN LLP**
Adam T. Klein
Molly A. Brooks
Michael J. Scimone
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**SAPIR & FRUMKIN LLP**
Donald L. Sapir
Howard Schragin
399 Knollwood Road, Suite 310
White Plains, New York 10603
Telephone:  (914) 328-0366

**Attorneys for Plaintiff**

26