Sam S. Shaulson (SS-0460)
Thomas A. Linthorst (TL-3345)
tlinthorst@morganlewis.com
Law Offices
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York 10178
 (212) 309-6718 (Telephone)
 (212) 309-6001 (Fax)

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIFFANY RYAN, individually and on behalf of all other similarly situated,<br><br>             Plaintiff,<br><br>             v.<br><br>JPMORGAN CHASE & CO., and JPMORGAN CHASE BANK, N.A.,<br><br>             Defendants. | **Docket No.: 12-cv-4844-VLB** |

### REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY ACTION, AND TO COMPEL ARBITRATION

## **TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | THE FLSA'S COLLECTIVE ACTION PROCEDURE CAN BE WAIVED | 1 |
| II. | THE BAA IS NOT CONTRARY TO FEDERAL POLICY | 4 |
| | A. The BAA Does Not Violate the NLRA | 4 |
| | B. The BAA Does Not Violate the Norris-LaGuardia Act | 6 |
| | C. There Is No Conflict Between the FAA, NLRA and NGA | 7 |
| III. | THE BAA DOES NOT IMMUNIZE CHASE FROM FLSA CLAIMS | 8 |
| IV. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Arrington v. NBC,*
531 F. Supp. 498 (D.D.C. 1982) ............................................................................................. 4

*Ass'n of Civilian Technicians, Silver Barons Chapter v. FLRA,*
200 F.3d 590 (9th Cir. 2000) ................................................................................................... 5

*AT&T Mobility LLC v. Concepcion,*
131 S. Ct. 1740 (2011) ............................................................................................................ 8

*Barfield v. N.Y. City Health & Hosp. Corp.,*
537 F.3d 132 (2d Cir. 2008) .................................................................................................... 9

*BedRoc Ltd. v. United States,*
541 U.S. 176 (2004) ................................................................................................................ 2

*CompuCredit v. Greenwood,*
132 S. Ct. 665 (2012) .............................................................................................................. 7

*D'Antuono v. Serv. Road Corp.,*
789 F. Supp. 2d 308 (D. Conn. 2011) .................................................................................... 10

*Damassia v. Duane Reade, Inc.,*
250 F.R.D. 152 (S.D.N.Y. 2008) ............................................................................................. 2

*Gaylor v. United States,*
74 F.3d 214 (10th Cir. 1996) ................................................................................................... 3

*Gilmer v. Interstate/Johnson, Lane Corp.,*
500 U.S. 20 (1991) ..................................................................................................... 1, 2, 3, 5, 6

*In re Am. Express Merch. Litig.,*
554 F.3d 300 (2d Cir. 2009) ("*Amex I*") ........................................................................ 3, 8, 9

*In re Am. Express Merch. Litig.,*
634 F.3d 187 (2d Cir. 2011) ("*Amex II*") .............................................................................. 3

*In Re Am. Express Merch. Litig.,*
667 F.3d 204 (2d Cir. 2012) ("*Amex III*") ............................................................................. 3

*LaVoice v. UBS Fin. Servs., Inc.,*
2012 WL 124590 (S.D.N.Y. Jan. 13, 2012) ................................................................... 1, 3, 8

*Local 205 v. Gen. Elec. Co.*,
  233 F.2d 85 (1st Cir. 1956)..................................................................................6

*Morvant v. P.F. Chang's China Bistro, Inc.*,
  2012 WL 1604851 (N.D. Cal. May 7, 2012)........................................................7

*Pomposi v. GameStop, Inc.*,
  2010 WL 147196 (D. Conn. Jan. 11, 2010).....................................................9, 10

*Ragone v. Atlantic Video at Manhattan Ctr.*,
  595 F.3d 115 (2d Cir. 2010)..................................................................................8

*Raniere v. Citigroup Inc.*,
  827 F. Supp. 2d 294 (S.D.N.Y. 2011)............................................................1, 2, 4

*Reid v. Supershuttle Int'l, Inc.*,
  2010 WL 1049613 (E.D.N.Y. Mar. 22, 2010).......................................................9

*Sanders v. Forex Capital Markets, LLC*,
  2011 WL 5980202 (S.D.N.Y. Nov. 29, 2011).......................................................1

*Seus v. John Nuveen & Co.*,
  146 F.3d 175 (3d Cir. 1998), *overruled on other grounds by
  Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000)...........7

*Shahriar v. Smith & Wollensky Restaurant Grp., Inc.*,
  659 F.3d 234 (2d Cir. 2011)..................................................................................2

*Sutherland v. Ernst & Young LLP*,
  768 F. Supp. 2d 547 (S.D.N.Y. 2011)..............................................................8, 10

*Vanguard Corp. v. Jackson*,
  2011 WL 3606517 (D.D.C. Aug. 17, 2011).........................................................5

**OTHER CASES**

*In re D.R. Horton*, 357 NLRB No. 184, 2012 WL 36274 (2012)..........................4, 5, 6

*Mansberger v. Ernst & Young LLP*,
  No. 652093/10, Mtn. Seq. No. 004 (Sup. Ct. N.Y. Cnty., July 7, 2011)..............8

*New Vista Nursing & Rehab., LLC*,
  2011 WL 6936391 (NLRB Dec. 30, 2011)...........................................................5

**FEDERAL STATUTES**

61 Stat. 87 (1947)......................................................................................................4

29 U.S.C. § 104 *et seq*.............................................................................................6

29 U.S.C. § 152(3) ...................................................................................................................4

29 U.S.C. § 153(b) ................................................................................................................4, 5

29 U.S.C. § 216(b) .......................................................................................................2, 3, 4, 8

29 U.S.C. § 103(a), (b) ............................................................................................................6

**OTHER AUTHORITIES**

Memorandum GC 10-06 (Jun. 16, 2010), available at
htttps://www.nlrb.gov/publications/ ........................................................................................6

As explained in their moving brief ("Br."), Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. have met all the requirements necessary to enforce their arbitration agreement with Plaintiff Tiffany Ryan. The parties agreed to arbitrate, the scope of the arbitration agreement encompassed FLSA claims, and there is nothing in the FLSA indicating that Congress intended FLSA claims to be nonarbitrable. Plaintiff does not challenge the fact that each of these elements are met, but instead argues that a contract for arbitration that contains a collective action waiver is illegal and unenforceable because she claims: (1) the FLSA's collective action procedure cannot be waived, (2) the waiver of collective actions violates the National Labor Relations Act ("NLRA"), and the Norris-La Guardia Act ("NGA"), and (3) Plaintiff would be unable to vindicate her FLSA rights through individual arbitration because the costs of pursuing her claim would be too high.[1] Because none of these arguments has merit, this Court should grant Defendants' motion and compel arbitration.

## I.   THE FLSA'S COLLECTIVE ACTION PROCEDURE CAN BE WAIVED.

Plaintiff relies almost exclusively on the decision in *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294 (S.D.N.Y. 2011), for the conclusion that the collective action procedure is a substantive right under the FLSA, making a waiver *per se* unenforceable. As discussed in Defendants' brief, *Raniere* is an outlier that conflicts with the Supreme Court's decision in *Gilmer* and every other court that has addressed the issue (including *LaVoice v. UBS Fin. Servs., Inc.*, 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012), and five U.S. Courts of Appeals). Br. at 7-8, 14-15. Critically, *Raniere* did not demonstrate that Congress, in enacting the FLSA, intended the

---

[1] Plaintiff does not dispute that she read and signed the Binding Arbitration Affirmation in her offer letter, or that she read and understood the Binding Arbitration Agreement with the agreement to arbitrate her claims on an individual basis. See *Gilmer v. Interstate/Johnson, Lane Corp.*, 500 U.S. 20, 33 (1991) (enforcing arbitration agreement required as a condition of employment); *Sanders v. Forex Capital Mkts., LLC*, 2011 WL 5980202, at *4 (S.D.N.Y. Nov. 29, 2011) (compelling arbitration where the plaintiff filled out an online application for a foreign-exchange trading service and clicked the on-line "Yes" button next to the phrase "Arbitration Agreement").

collective action procedure to be a non-waivable substantive right. Br. at 10-14. Nothing in the FLSA's text – which the *Raniere* opinion did not discuss despite the fact that it is the starting point for all statutory interpretation – supports that conclusion. *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) (the court's inquiry "begins with the statutory text, and ends there as well if the text is unambiguous."). Rather, the statute at 29 U.S.C. § 216(b) merely gives employees the procedural option of pursuing FLSA claims through a collective action or individually. Because the text is unambiguous and does not prohibit plaintiffs from waiving their right to participate in collective actions, discussion of the legislative history is unnecessary, and in any event, does not support the conclusion that collective action procedures are non-waivable. *See* Br. at 10-14.

Plaintiff attempts to distinguish the otherwise uniform line of cases approving collective action waivers on the basis that they do not discuss *Raniere*'s "critical point" that an otherwise enforceable arbitration agreement should not become the vehicle to invalidate the Congressional purpose of providing collective actions. Opp. at 7. In fact, no other case found that assumption to be correct – that Congress intended to have FLSA claims pursued only through the collective action mechanism. The Second Circuit and courts in this Circuit have recognized that a collective action is procedural and can be waived. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, (2d Cir. 2011) ("plaintiffs frequently bring [FLSA and New York] claims together in a single action using the *procedural* mechanisms available under 29 U.S.C. § 216(b) to pursue the FLSA claims as a collective action . . . .") (emphasis added); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 164 (S.D.N.Y. 2008) (Lynch, J.) ("It is far more natural to see the opt-in provisions of the FLSA, like the class action rules they resemble, simply as procedural mechanisms for vindication of the substantive rights provided by the FLSA.").

Plaintiff also tries to distinguish the cases cited by Defendants by arguing that many of them improperly relied upon the Supreme Court's statement in *Gilmer* that collective action

2

procedures could be waived – claiming that the Second Circuit rejected that premise in *In re Am. Express Merch. Litig.*, 554 F.3d 300 (2d Cir. 2009) ("*Amex I*"). Opp. at 7. In actuality, the Second Circuit concluded that while *Gilmer* suggests that class/collective action procedures *could* be waived, such discussion was *dicta* that "did not apply" because the *Amex* court was not asked to decide that issue -- "[t]he plaintiffs do not proffer the argument rejected in *Gilmer*, namely that the class action waiver is unenforceable merely because the relevant statute allows class actions." *Amex I*, 554 F.3d at 314; *In re Am. Express Merch. Litig.*, 634 F.3d 187, 196 (2d Cir. 2011) ("*Amex II*"). And even if the Second Circuit were correct that *Gilmer*'s pronouncement was *dicta*,[2] federal courts are "bound by Supreme Court *dicta* almost as firmly as by the Court's outright holdings . . . ." *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996).

Plaintiff next argues that *LaVoice* is irrelevant because it was decided before *In Re Am. Express Merch. Litig.*, 667 F.3d 204 (2d Cir. 2012) ("*Amex III*"). Opp. at 8. However, in *Amex III*, the Second Circuit reiterated the same statement it made in *Amex I*: "[w]e do **not** hold today that class action waivers in arbitration agreements are *per se* unenforceable . . . ." *Amex III*, 667 F.3d at 219 (emphasis added). Because *LaVoice* went through an analysis to ensure that the plaintiff's FLSA statutory rights could still be vindicated on an individual basis, concluding that they could, *LaVoice* at *7-9, nothing in the *Amex* line of decisions undermines *LaVoice*.

Finally, Plaintiff argues that the FLSA's legislative history demonstrates that the collective action procedure is non-waivable because when the law was first passed in 1938 it provided that actions could be brought by employees "on behalf of themselves and other employees similarly

---

[2] One of the *Gilmer* Court's two alternate reasons for concluding that an arbitration agreement that did not explicitly provide for class actions was enforceable was: "even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator, the fact that the ADEA provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred." *Id.* at 32. That statement plainly means that individuals can agree to individual arbitration even if (1) the statute permits collective actions and (2) the agreed-upon arbitral forum does not allow collective actions. Put simply, *Gilmer* holds that parties can agree to waive their collective-action rights under § 216(b) in arbitration agreements.

situated." Opp. at 8. Prior to the 1947 amendments, however, this language did not refer to the current collective action procedures – which require that an individual can only be a party plaintiff by filing a consent to join the case. 29 U.S.C. § 216(b). Those procedures were added in 1947, which change was designed to stem a flood of "representative" actions. 61 Stat. 87 (1947); *Arrington v. NBC*, 531 F. Supp. 498, 502 (D.D.C. 1982). As such, the opt-in FLSA collective action mechanism that exists today did not exist in 1938, calling into question the relevance of Representative Keller's 1938 remarks relied upon by the *Raniere* court. *Raniere*, 827 F. Supp. 2d at 314. In any event, Plaintiff has not addressed the facts that: Rep. Keller's comments focused on the ability of employees (rather than the government) to pursue claims, the comments of one legislator cannot reflect Congressional intent, and the addition of the opt-in mechanism in 1947 was intended to protect *employers* and *limit* the jurisdiction of the federal courts. Br. at 10-13.

## II.  THE BAA IS NOT CONTRARY TO FEDERAL POLICY.

As Defendants previously explained at length, the application of the BAA to Plaintiff does not violate either the NLRA or the NGA, and *In re D.R. Horton*, 357 NLRB No. 184, 2012 WL 36274 (2012), is not binding precedent to the contrary. Br. at 19-25.[3]

### A.  The BAA Does Not Violate the NLRA.

In an attempt to refute Defendants' explanation why *D.R. Horton* is invalid, Plaintiff incorrectly asserts the decision only needed to meet the two member quorum set out in 29 U.S.C. § 153(b). Opp. at 13-14. In fact, the Board could only have properly issued the *D.R. Horton* decision with two members if it had previously delegated its authority to a three-member panel

---

[3] In fact, *D.R. Horton* has no application here because Plaintiff was a supervisor at Chase and, therefore, does not come within the purview of the NLRA at all. *See* 29 U.S.C. § 152(3) ("The term 'employee ... shall not include...any individual employed as a supervisor . . . ."); *accord D.R. Horton, Inc.*, 357 NLRB No. 184, at *12 ("We emphasize the limits of our holding and its basis . . . only agreements applicable to 'employees' as defined in the NLRA even potentially implicate Section 7 rights"). The Court need not decide Plaintiff's supervisory status under the NLRA, however, because *D.R. Horton* was not validly promulgated and has no application here, as discussed *infra*.

with a blanket delegation, which it did not do, or made a delegation for the case and stated that fact within its opinion, which it also did not do. 29 U.S.C. § 153(b); *see also New Vista Nursing & Rehab., LLC*, 2011 WL 6936391, at *1 (NLRB Dec. 30, 2011) ("Pursuant to the provisions of the [NLRA], the [Board] has delegated its authority in this proceeding to a three member panel."). Thus, the Board lacked legal authority to render a decision with only two members. *Cf. Am. Vanguard Corp. v. Jackson*, 2011 WL 3606517, at *2 (D.D.C. Aug. 17, 2011) ("[A] court may uphold agency action only where the record establishes that the official who took such action was authorized to do so.").

Plaintiff also argues that the invalid *D.R. Horton* decision is entitled to the "greatest deference" because the NLRB was only "considering whether the NLRA conflicted with the FAA". But the NLRB's views on whether the NLRA conflicts with another statute are not entitled to any deference. *See Ass'n of Civilian Technicians, Silver Barons Chapter v. FLRA*, 200 F.3d 590, 592 (9th Cir. 2000) ("[C]ourts do not owe deference to an agency's interpretation of a statute it is not charged with administering **or when an agency resolves a conflict between its statute and another statute**.") (emphasis added).

*D.R. Horton* also is wrongly decided because it illogically and incorrectly assumes the employees' right to engage in protected concerted activity included a substantive right to bring a class/collective action and ignores *Gilmer,* as discussed at Br. 23-24. Even if the NLRA prohibits retaliation in the terms and conditions of employment for workers who collectively file legal action against their employer – which is the most that Plaintiff's authority supports – nothing in the NLRA purports to dictate the forum or procedures for the adjudication of non-NLRA claims.

Plaintiff relies on two cases that follow *D.R. Horton* and strike down class-action waivers, but these two cases are against the vast weight of authority, as reflected by the sampling of eleven

cases cited by Defendants rejecting *D.R. Horton*. Br. at 19-21.[4]  For all the reasons described in Defendants' moving brief (Br. at 19-25), *D.R. Horton* is no obstacle to enforcement of the BAA.

### B.   The BAA Does Not Violate the Norris-LaGuardia Act.

Plaintiff claims the collective action waiver in the BAA also violates the NGA because it prohibits enforcement of agreements that interfere with concerted activity. Plaintiff is wrong. The NGA is an anti-injunction statute. It deprives courts of jurisdiction to issue injunctions in labor disputes, except under very specific exceptions. 29 U.S.C. § 104 *et seq*. This case does not involve injunction proceedings and the NGA has no application to Defendants' motion to compel arbitration. *Local 205 v. Gen. Elec. Co.*, 233 F.2d 85, 90 (1st Cir. 1956) ("[I]t is our conclusion that jurisdiction to compel arbitration is not withdrawn by the Norris-LaGuardia Act" because "the relief sought is not the 'temporary or permanent injunction'").

Although the NGA invalidates certain contracts, it specifically defines those contracts to which it applies (colloquially known as "yellow-dog" contracts), and is limited to contracts not to join a union or to quit employment if one becomes a union member. NGA § 3(a), (b), 29 U.S.C. § 103(a), (b). Plaintiff attempts to argue to the contrary – that a class action waiver is in conflict with public policy to encourage "self-organization" and "concerted activities for the purpose of collective bargaining or other mutual aid or protection" declared in NGA Section 102, and accordingly class waivers must fall within the scope of the contracts prohibited by Section 103. Opp. at 16. Plaintiff, however, is unable to cite any authority for such an expansive reading of either Section 102 or 103, except for parts of the discussion in *D.R. Horton* (which she claims

---

[4] Plaintiff also pulls a misleading quote from G.C. Memo 10-06 suggesting the memo found mandatory arbitration agreements with class action waivers unlawful, and the NLRB was just counseling for the use of prosecutorial discretion. In fact, the Memo goes on to say in the next sentence, "[e]mployers, nonetheless, may require individual employees to sign a *Gilmer* waiver of their right to file a class or collective claim without per se violating the Act" as long as employees will not be subject to discipline or retaliation by the employer for challenging the agreement. GC Memo 10-06 at 7. And because any cause of action for violating the NLRA by requiring the agreement would have arose in 2010 when Plaintiff signed it, or at least prior to her termination in 2011, Plaintiff's argument that there is no retroactive effect to the *D.R. Horton* opinion issued in 2012 must fail.

6

were not "interpreting" the NGA but merely "construing" it as an aid to understanding the NLRA). Opp. at 12-13, 17. The only other authority discussed by Plaintiff rejects her position. *See Morvant v. P.F. Chang's China Bistro, Inc.*, 2012 WL 1604851, at *10 (N.D. Cal. May 7, 2012) (rejecting challenge to arbitration agreement with class action waiver and concluding that "[a]n agreement to arbitrate is not one of those contracts to which the Norris LaGuardia Act applies"); *cf. Seus v. John Nuveen & Co.*, 146 F.3d 175, 184 (3d Cir. 1998) (rejecting argument that arbitration clause in a securities brokerage agreement was analogous to a "yellow-dog" contract), *overruled on other grounds by Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000). Thus, the NGA does not apply here.

### C.     There Is No Conflict Between the FAA, NLRA and NGA.

Plaintiff argues that there is no conflict between NLRA, NGA and the FAA. Plaintiff is correct, but not for the reasons she asserts. Because the NLRA and NGA do not bar collective action waivers in arbitration agreements (Br. at 23-24), they are consistent with the FAA, which compels enforcement of the arbitration agreement here according to its terms. But even if there were a conflict, *CompuCredit v. Greenwood*, 132 S. Ct. 665, 669 (2012), recognized that courts are required to enforce agreements to arbitrate "***according to their terms*** . . . even where the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *Id.* (emphasis added). There is no congressional command mandating class/collective action procedures. Thus, because "Congress did not expressly provide that it was overriding any provision of the FAA when it enacted the NLRA or the Norris-LaGuardia Act, the Court cannot read such a provision into either Act, and must enforce the parties' arbitration agreement [including the collective action waiver] according to its terms." *Morvant*, 2012 WL 1604851, at *11.

7

### III. THE BAA DOES NOT IMMUNIZE CHASE FROM FLSA CLAIMS.

Plaintiff argues that even if class waivers were permissible in some circumstances, Plaintiff's FLSA claim cannot be vindicated in individual litigation (as required by *Amex*) based on the alleged *de minimis* size of her potential recovery (which she estimates as $9,817.50 – i.e. "$4,908.75 plus an amount equal to that in liquidated damages" Opp. at 25) and the fact that her attorneys have already spent over $82,000 in this litigation. Even if *Amex* remains good law after *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740 (2011), *see* Br. 15-16, neither Plaintiff's efforts to minimize the damages she seeks nor her effort to tout her counsel's enormous purported expenditures are sufficient to bring her within the scope of *Amex*.

As explained in Defendants' prior brief at 16-17, *Amex I* found that the rights at issue could not be vindicated through individual arbitration because in order to pursue a claim of approximately $5,000 (when including treble damages), the plaintiff would incur *over $1 million dollars in expert fees*, which expert fees were not recoverable *even if the plaintiff prevailed*. *Amex I*, 554 F.3d at 317-19.[5] In contrast, Plaintiff does not allege that she will incur *any* un-recoverable expert fees in this litigation. And, as in *LaVoice*, her claims can be vindicated through individual arbitration since any attorneys' fees she incurs can be recovered in that arbitration if she is the prevailing party. *See* 29 U.S.C. § 216(b); BAA ¶ 7(h)[6]; *LaVoice*, at *7. These facts alone are sufficient to distinguish *Amex*, and demonstrate that Plaintiff will be able to vindicate her FLSA rights through an individual action. *See, e.g., Mansberger v. Ernst & Young LLP*, No. 652093/10, Mtn. Seq. No. 004, "Decision and Order" (Sup. Ct. N.Y. Cnty., July 7, 2011) (enforcing

---

[5] Similarly, in *Sutherland v. Ernst & Young LLP*, 768 F. Supp. 2d 547, 551-53 (S.D.N.Y. 2011), the plaintiff submitted evidence that she would incur, *inter alia*, expert fees of approximately $33,500, while her claim was only worth $1,867 ($3,734 with liquidated damages).

[6] In addition, Plaintiffs point to *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115 (2d Cir. 2010), as a case where plaintiffs were precluded from vindicating their federal statutory rights through individual arbitration (Opp. at 4), but that holding was based on the fact that the arbitration agreement contained a shortened statute of limitations and fee-shifting provision. No such provisions are present here. *See* BAA ¶7(a) (all "ordinary and reasonable administrative expenses of the arbitration, including fees for a single arbitrator . . . will be paid completely by JPMorgan Chase").

8

arbitration agreement with class action waiver, *regardless of amount of potential recovery*, where plaintiff could recover fees and costs just as in court).

Moreover, even if a comparison of *recoverable* attorneys' fees to the amount sought by the individual were pertinent to the vindication analysis, Plaintiff has not carried her burden of proof. "[W]hen a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Amex I*, 554 F.3d at 315. Here, Plaintiff has not shown either: (1) what the attorneys' fees would be necessary to pursue her action *individually* in arbitration, or (2) that those fees would be so high compared to the amount at issue to prevent any attorney from taking her case.

First, the exorbitant and incredible amount that Plaintiff's counsel claim to have spent thus far on the litigation has no bearing on the attorneys' fees that would be incurred in *individual* arbitration of Plaintiff's claims. Because Plaintiff's counsel spent some portion of the over $82,000 they claim in attorneys' fees in investigation of claims for a nationwide class, drafting collective action allegations, and opposing arbitration based on the desire to bring claims on behalf of a nationwide class, the amount spent has no bearing on whether Plaintiff will be able to vindicate her individual claim. *Cf. Reid v. Supershuttle Int'l, Inc.*, 2010 WL 1049613, at *2-4 (E.D.N.Y. Mar. 22, 2010) (enforcing arbitration agreement with class action waiver despite attorneys' statement that they had spent $1 million in attorneys fees because this covered multiple plaintiffs and claims). There is no question that had this litigation involved only individual FLSA claims, Plaintiff could find counsel who would be able to pursue the arbitration in a more cost effective manner and without racking up the surprisingly large costs that her counsel claims to have incurred so far on behalf of the putative class. *See, e.g., Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 153 (2d Cir. 2008) (awarding $49,889 in attorneys' fees to plaintiff's counsel who won summary judgment for individual in FLSA action); *Pomposi v. GameStop, Inc.*, 2010 WL

9

147196, at *7 (D. Conn. Jan. 11, 2010) (experienced FLSA counsel estimated that it would take $45,000 -$60,000 in attorneys' fees to handle FLSA claim through completion, which are recoverable).

Second, Plaintiff admits that $9,817.50 is not the damages she actually plans to pursue in the litigation. Opp. at 25 (Plaintiff will "pursue higher damages in this action"). Plaintiff understates her claim by using the fluctuating workweek method in calculating the amount of overtime due to be paid. Opp. at 25, Klein Decl. ¶¶ 9-13. In contrast, Plaintiff's own Complaint alleges that she is entitled to one and one-half times her regular rate of pay (not 0.5). Complaint, Prayer for Relief. Thus, a true estimation of damages sought by Plaintiff based on her Complaint, her $38,000 salary, her employment from March 2010 through February 2012, and her assumption that she worked 7.5 hours of overtime each week (Klein Decl. ¶12) would be $21,375.90 and **$42,751.80** with liquidated damages. Such potential recovery is large enough that Plaintiff could find attorneys willing to handle her individual claim (*see* Br. at 18 & n.3) and other courts within this Circuit have held that FLSA claims much smaller than this could be vindicated individually. *See, e.g., D'Antuono v. Serv. Road Corp.*, 789 F. Supp. 2d 308, 342-44 (D. Conn. 2011) (enforcing arbitration agreement with collective action waiver and distinguishing *Amex* and *Sutherland*, where the plaintiff could recover $20,000 under the FLSA); *Pomposi*, 2010 WL 147196, at *7 (enforcing class waiver where amount in controversy of individual FLSA claims was $11,000).

### IV. CONCLUSION

Because Plaintiff's FLSA claim is covered by a valid and binding arbitration agreement, Defendants respectfully request that this Court dismiss or stay this action and compel arbitration.

Dated: October 16, 2012

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

s/Thomas A. Linthorst
Thomas A. Linthorst (TL-3345)
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY ACTION, AND TO COMPEL ARBITRATION** was electronically filed with the Court and served via its ECF/CM system, on October 16, 2012, upon the following:

> Donald L. Sapir, Esq.
> Sapir & Frumkin LLP
> 399 Knollwood Road, Suite 310
> White Plains, NY 10603
> Tel: 914-328-0366; Fax: 914-682-9128
>
> Michael Scimone, Esq.
> Adam T. Klein, Esq.
> Molly A. Brooks, Esq.
> OUTTEN & GOLDEN LLP
> 3 Park Avenue, 29th Floor
> New York, NY 10016
> Tel: 212-245-1000
>
> *Attorneys for Plaintiff*

> s/ Thomas A. Linthorst
> Thomas A. Linthorst